Alice MAJOR (Plaintiff), Respondent,

v.

Kenneth DAVENPORT (Defendant),
Appellant.

No. 29790.

St. Louis Court of Appeals.
Missouri.

Nov. 5, 1957.

Fry, Edwards & Wright, Jackson A. Wright, Mexico, for appellant.

Alexander, Welliver & Wayland, Columbia, Ralph L. Alexander, Warren D. Welliver, Lawrence M. Woods, Columbia, Barnes & Barnes, Latney Barnes, Mexico, for respondent.

ANDERSON, Judge.

This is an action by Alice Major, as plaintiff, against Kenneth Davenport, as defendant, to recover damages for personal injuries alleged to have been sustained on May 16, 1954, as a result of a collision between an automobile driven by plaintiff and a truck operated by defendant. The trial resulted in a verdict and judgment for plaintiff in the sum of $2,500. Defendant has appealed.

The petition alleged that on May 16, 1954, plaintiff was driving her Ford automobile in an easterly direction on County Road "T" in Audrain County, Missouri; that at said time defendant was driving a Chevrolet pick-up truck northwardly on a public

road which intersects County Road "T", and that defendant so carelessly and negligently drove said truck as to cause the same to violently and forcibly collide with the automobile driven by the plaintiff.

The negligence charged was: (1) failure to yield the right of way to plaintiff when plaintiff reached the intersection substantially prior to the time defendant reached said intersection; (2) negligent failure to keep a vigilant lookout ahead and laterally for plaintiff and other persons traveling upon and along said County Road "T"; (3) negligent failure to swerve his said truck, or change the course thereof, when he could have, with the means at hand, swerved said truck or changed the course thereof and have avoided the collision; and (4) negligently driving said pick-up truck directly into the path of plaintiff's automobile.

The answer of defendant admits that a collision occurred, but denies generally each and every other allegation of said petition. It is then alleged that plaintiff's injuries were the result of her own contributory negligence, in that plaintiff: (1) negligently operated her car at a high and dangerous rate of speed under the circumstances then and there existing; (2) negligently failed to keep a vigilant lookout ahead and laterally for the defendant and others traveling upon, across and over, or approaching said intersection; (3) negligently failed to yield the right of way when both vehicles entered the intersection at approximately the same time, and when defendant's truck entered said intersection from plaintiff's right; (4) negligently failed to sound a warning of her approach to the intersection; and (5) negligently failed to swerve or stop her automobile, when plaintiff could have done so with safety to herself and others in her car, and thus have avoided the collision.

The collision, out of which this action arose, occurred on May 16, 1954, a few minutes after five o'clock p.m., at the point where County Road "T", an east and west

highway, intersects an unnamed road which runs north and south. The intersection in question is located in Audrain County, about two miles west of County Road "E". Plaintiff, just prior to the accident, was driving her car eastwardly on County Road "T", and defendant was operating a pick-up truck northwardly on said unnamed highway.

Highway "T" is a gravel road, the traveled portion of which is twenty feet wide according to the measurements made by State Trooper Cameron, who was plaintiff's witness. Plaintiff's witness Beecher Sudbrock testified that, although he never measured the road, he guessed it was about twenty-five feet wide. The road was straight for several miles west of the intersection. There was a slight downgrade to the intersection from the west for about a quarter of a mile. The south shoulder of the road was about ten feet wide. There were two regularly traveled areas on said road.

The north and south highway was a gravel road, the traveled portion of which was nineteen feet wide. It was about a foot and one-half lower than Highway "T". There was a slight incline toward the intersection from the south. At the time of the collision there was a hedge row running north and south along the west side of this road. It began at the south edge of the Highway "T" right of way, and for about eighty-five feet south of its northern extremity was cut to a height of about four feet. Beyond that it had not been cut back. The ground on which the hedge grew was from a foot to two feet higher than the traveled portion of the road. There was new growth on the cut back portion, according to defendant's testimony, of about two feet in height. He stated that it had grown to the extent "where you couldn't see over it."

With reference to the evidence as to whether the hedge obstructed the view of traffic northbound toward the intersection for one traveling eastwardly on Highway

"T", Mrs. Miller, a passenger in plaintiff's car, testified:

"Q. * * * as you approached from the west, going east, could you have seen the Davenport truck approaching from the south back to the point where these trees were? A. I feel certain that we could have. * * *

"Q. In other words, the hedge would not have obstructed your vision of him, is that correct? A. Had it been in view, we would have seen it."

Breecher Sudbrock, also a witness for plaintiff and a passenger in the latter's car, testified:

"Q. As you approached the intersection there on 'T' going east, would a car traveling north on that road be—would you be able to see it? A. Well, not until you were very near.

"Q. How near would you say, Mr. Sudbrock? A. Oh, 40 or 50 feet, something like that."

Plaintiff, when asked if a person approaching the intersection from the west could see a car traveling on the north and south road, stated: "You might be able to see the top of a car." Defendant, who was called as a witness by plaintiff, testified: "Q. * * * Now you then couldn't see up to the west to see any car that was approaching on 'T' until you really got right into the intersection, could you? A. No."

There were three passengers in plaintiff's car, Mrs. Archie Miller (a daughter of plaintiff), and Mr. and Mrs. Beecher Sudbrock. Mrs. Miller and Mrs. Sudbrock were seated to the right of plaintiff in the front seat, and Mr. Sudbrock occupied the rear seat. They had been to a schoolhouse located about seven miles southwest of the point of collision and were returning to Mrs. Miller's home. As plaintiff approached the intersection she was driving about forty miles per hour. She at no time slackened the speed of her car prior to the collision. She did not sound her horn or change the

direction of her car at any time. She was unaware of defendant's car approaching from the south. The first she knew of its presence was when the collision occurred, when she was about two-thirds of the way across the intersection.

Plaintiff testified on direct examination that she was certain she looked both north and south as she approached the intersection and saw no car approaching from the south. She did not say where she was with reference to the intersection at the time she looked. On cross-examination she first testified that she could not say how far she was from the intersection when she looked both ways. She later stated that it was at a point much closer than a quarter of a mile. She then testified:

"Q. * * * Do you have any way you could describe it in blocks or feet * * *? A. I just really don't know how I would describe it. * * * I imagine it wasn't over a block back or maybe even less than that I looked. I just wouldn't know how far back it was.

"Q. Did you see anything approaching the intersection? A. No, I didn't.

"Q. And as nearly as you can tell it was somewhere between the intersection and a point approximately a block away, is that right? A. Yes, or less. I just really don't know.

"Q. Could you tell me this, was it further back than say, oh, four car lengths from the edge of the intersection, do you know? A. No, I wouldn't know.

"Q. * * * And from then on to the intersection, as I understand it, you did not look again, wherever it was that you looked? A. No, I didn't say that. I said I don't remember that I looked again, but I may have."

Plaintiff was looking straight ahead when her car was struck. She was proceeding on the right-hand side of the road. None of the occupants of plaintiff's car saw defendant's truck until an instant before the collision. Plaintiff was aware of the existence

of this crossroad, having previously traveled over Highway "T". She had noticed the north and south road while on the way to the schoolhouse and knew of the intersection. Plaintiff introduced in evidence a photograph of Highway "T" taken from a point sixty paces west of the intersection. The north-south highway is clearly visible in this photograph.

Defendant testified that he had been traveling about thirty-five miles per hour, but as he approached the intersection he decreased the speed of his truck. He stated he was going between twenty and twenty-five miles per hour at the time of the collision. Mr. Cameron, the state trooper, testified that defendant told him he was driving about thirty-five miles per hour just prior to the collision. He testified that his report shows that defendant stated: "I was going to slow down and look, and before I had time to look I was turned around in the road." Defendant testified: "* * * as I got close to the intersection I looked to the east and I looked to the west and I couldn't see anything and as I got up, right up to the crossroads, I looked again and I still didn't see anything, and that's when I hit.

"Q. Did you look both ways just as you got to the crossroads? A. No, just to the west."

Defendant did not sound his horn or attempt to stop prior to entering the intersection. The front end of defendant's truck struck the plaintiff's car in that area from the middle to the back of the car. The impact caused plaintiff's car to turn over, and it finally came to rest on its left side in the ditch northeast of the intersection. The pick-up truck came to rest on Highway "T" and headed in a northeasterly direction. At the scene of the collision defendant "was running around with his hand up on his head * * * saying: 'Look what I've done. Look what I've done. * * * I saw you but I didn't stop.'"

There were no stop signs or traffic controls in either direction at this intersection.

The defendant offered no evidence.

At the close of the case defendant moved for a directed verdict on the ground that the evidence established that plaintiff was guilty of contributory negligence as a matter of law. This motion was overruled.

Plaintiff's case was submitted on primary negligence, the jury being directed to return a verdict for plaintiff upon a finding that defendant was negligent "(1) in failing to exercise the highest degree of care to keep a lookout ahead and laterally for persons and vehicles upon said County Road 'T'; (2) in carelessly and negligently driving said pick-up truck into the intersection mentioned in the evidence directly in the path of plaintiff's automobile; (3) in carelessly and negligently failing to swerve his said pick-up truck or change the course thereof when he could * * * with the means and appliances at hand and with safety to himself, have swerved his said truck or changed the course thereof, and thus and thereby avoided colliding with plaintiff's automobile."

Appellant's first assignment on this appeal is that the trial court erred in overruling his motion for a directed verdict. In support of this assignment it is urged that plaintiff, as a matter of law, was guilty of negligence which contributed to cause the accident in that she failed to keep a lookout and discover the defendant in time thereafter to warn him of her approach, or to stop or swerve her automobile and thus prevent a collision.

The evidence is clear that plaintiff at no time saw the defendant's car prior to the collision. It also appears from the plaintiff's evidence that a northbound car would be visible to one traveling east 40 or 50 feet from the intersection. This was testified to by Mr. Sudbrock. Mrs. Miller testified that she felt certain the Davenport truck could have been seen approaching from a distance as far south as the hedge

was cut back, which, according to plaintiff's evidence, was about 85 feet. Plaintiff was traveling 40 miles per hour and defendant 35 miles per hour. It is apparent therefore that when plaintiff reached a point 45 or 50 feet from the intersection defendant was at a lesser distance and could have been seen by plaintiff. These facts leave no room for doubt that, had plaintiff maintained a proper lookout, she could have seen defendant's truck within such distance and traveling at such speed as reasonably to indicate immediate danger of collision.

■ Plaintiff, as she approached the intersection, was under a duty to watch for traffic approaching from the south and to see what was plainly visible. Failure to do so constituted negligence as a matter of law. Douglas v. Whitledge, Mo.App., 302 S.W.2d 294; Roux v. Pettus, Mo.App., 293 S.W.2d 144.

■ Plaintiff testified that she did look both to the north and to the south as she approached the intersection, but was unable to give any information as to where her car was with reference to the intersection at the time. Whether she failed to look at a time when it would have been possible to look effectively, or negligently failed to observe defendant's truck approaching, is not quite clear from the evidence. In either event, plaintiff's conduct was negligent. Douglas v. Whitledge, Mo.App., 302 S.W. 2d 294; Burton v. Moulder, Mo.Sup., 245 S.W.2d 844; Chess v. Reynolds, 189 Wash. 547, 66 P.2d 297; Whyte v. Lindblom, 216 Wis. 21, 255 N.W. 265, 256 N.W. 244; New York Tel. Co. v. Beckers, 2 Cir., 30 F. 2d 578; Smith v. Lamb, 220 Iowa 835, 263 N.W. 311; Dixon v. Pentony, 116 Pa.Super. 443, 176 A. 782; Rosenau v. Peterson, 147 Minn. 95, 179 N.W. 647; Geisin v. Rebel Creamery Co., 286 Mich. 635, 282 N.W. 848; Webber v. Graves, 234 App.Div. 579, 255 N.Y.S. 726.

■■ Plaintiff will not be relieved of the consequences of her own negligence by the fact that she may have reached and entered the intersection first. One entering an intersection, although having the advantage of the right of way under the statute (§ 304.021 RSMo 1949, V.A.M.S.), is not relieved of the duty of maintaining a proper lookout while approaching and entering said intersection. Wilson v. Toliver, Mo.Sup., 285 S.W.2d 575; Whyte v. Lindblom, 216 Wis. 21, 255 N.W. 265, 256 N.W. 244; New York Tel. Co. v. Beckers, 2 Cir., 30 F.2d 578. Said statute does not authorize blind driving. Brown v. Lee, 167 Va. 284, 189 S.E. 339. It was plaintiff's duty to keep a proper lookout, and to have her automobile under such control as to be in a position to avoid a collision with approaching vehicles, regardless of the statutory priority with respect to the right of way. Rosenau v. Peterson, 147 Minn. 95, 179 N.W. 647; Webber v. Graves, 234 App.Div. 579, 255 N.Y.S. 726.

In our opinion, plaintiff was guilty of contributory negligence as a matter of law. The judgment, accordingly, is reversed.

RUDDY, P. J., and MATTHES, J., concur.