William J. JANICKE, Plaintiff-Appellant,

v.

Betty HOUGH, Defendant-Respondent.

No. 24330.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

John J. Phillips and James S. Cottingham, Independence, for appellant.

Thos. E. Deacy, Thos. E. Deacy, Jr., Edward W. Mullen, Deacy & Deacy, Kansas City, for respondent.

MAUGHMER, Commissioner.

We have here a damage suit growing out of a collision between two automobiles at a city street intersection. The verdict was for the defendant. On appeal plaintiff contends (1) the court erred in giving defendant's instruction on contributory negligence and (2) there was no causal connection established between plaintiff's alleged improper acts and the collision.

Shortly after 11:00 a. m. on the Sunday morning of September 30, 1962, plaintiff, William J. Janicke, alone in his Chevrolet automobile, was proceeding east on Kansas street and nearing its intersection with Lightburne street in the City of Liberty, Missouri. At the same time the defendant, Betty Hough, with her one year old daughter lying on the back seat, was driving her Chevrolet Corvair north on Lightburne street approaching the same intersection. Both of these streets had bituminous surfaces and at the time were wet. The surrounding area was flat. There was a stop sign at the Lightburne entrance into the intersection. Kansas was a one way street —east only. A church was immediately adjacent to the northwest, Sunday morning services were in progress and automobiles were parked on Kansas street both east and west of Lightburne. Both vehicles, according to the evidence, approached the scene at from 20 to 25 miles per hour. The front part of defendant's Corvair struck the Chevrolet near the right rear fender.

Robert E. Jacobs, a part-time police officer, arrived shortly after the accident. He found defendant's vehicle with about one-third of its length into the intersection. He said plaintiff's car was "angled into a '60 Chevy on the south side of Kansas street 25 feet east from the intersection". After the collision with defendant, plaintiff's car had bounced first into an automobile parked on the north side of Kansas street and from that into a second car parked on the south side of Kansas street, both east of Lightburne.

Defendant was not familiar with the area. She stated that as she neared the intersection her child made an outcry, she looked over her shoulder and did not see the stop sign until it was only a few feet away. She applied her brakes, skidded, but was unable to stop completely before entering the intersection. After the collision, the only damage to her car was a dent in the chrome on the front end. The child was still lying, apparently undisturbed, on the back seat. The defendant later entered a plea of guilty to the charge of careless driving. She said she applied her brakes when she first saw the stop sign and did not see plaintiff's car until "I was about a car length from the intersection". "It seemed like his car was right in front of me".

Plaintiff's description of the occurrence was as follows: He approached the intersection at a speed of from 20 to 25 miles per hour. "Cars were lined up on both sides of the street" (parked), he could not see Lightburne street because of a "row of bushes running down Lightburne street". He saw the defendant's automobile "a split second" before the collision. His car entered the intersection first. After the collision with defendant, his vehicle struck an automobile parked on the north side of Kansas street and then one on the south side. When he first saw defendant she was "15 or 20 feet before the center of the intersection" and he at that time was "8 to 10 feet west of the west curb line of Lightburne". Plaintiff made no attempt to apply brakes but "stepped on the gas and tried to accelerate to get across ahead of her".

The plaintiff submitted and sought recovery solely upon defendant's failure to stop before entering the intersection thereby "violating the traffic stop sign". The defendant, having pleaded contributory negligence as a defense, offered and the court gave Instruction No. 6, submitting that defense. We set out Instruction No. 6:

"Your verdict must be for the defendant whether or not defendant was negligent if you believe:

"First, plaintiff either: failed to keep a careful lookout, or drove at an excessive speed, or failed to slow before entering the intersection; and

"Second, plaintiff's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and

"Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained".

This instruction authorized the jury to find that plaintiff was contributorily negligent if he (1) "failed to keep a careful lookout" or (2) "drove at an excessive speed" or (3) "failed to slow before entering the intersection". We agree with plaintiff's assertion that there must be evidence from which a jury might reasonably conclude that plaintiff did fail to keep a careful lookout, did drive at an excessive speed and did fail to slow before entering the intersection, else the giving of this instruction was improper. Dawley v. Hoy, Mo., 341 S.W.2d 111.

■ In deciding whether a defendant's instruction is supported by substantial evidence, the court must consider the evidence in a light most favorable to defendant and disregard all unfavorable evidence. Palmer v. Lasswell, Mo., 287 S.W.2d 822, 827; Dawley v. Hoy, supra, 341 S.W.2d l. c. 116.

■ Plaintiff concedes the point with respect to his "failure to slow before entering the intersection". He admits he did not slow, but rather speeded up in an effort to clear the area ahead of defendant. Plaintiff denies there is proper evidence justifying a submission of excessive speed. He says his speed was within the 25 miles per hour limit authorized by the city ordinances of Liberty. However, keeping within the posted or authorized speed limit does not necessarily show the exercise of the highest degree of care in respect to speed under any and all circumstances. Here the road surfaces were wet, church services were in progress, bushes obstructed the view to the south and automobiles were parked almost solidly on Kansas street where plaintiff was traveling. These circumstances resulted in restricting the street width, requiring a longer distance for stopping, and lessening the view to the south on the intersecting street. Was plaintiff, therefore, justified in approaching the intersection at the maximum or nearly maximum speed limit and, when he saw defendant's car to the south, stepping on the gas and speeding up? Were these acts in the exercise of the highest degree of care? We believe the issue of excessive speed under all of these surrounding circumstances was for the jury and was properly submitted for their determination. Kitchen v. Wilson, Mo., 335 S.W.2d 38; Steele v. Goosen, Mo., 329 S.W.2d 703.

That brings us to the third element. Was there evidence from which the trier of the facts would be authorized to conclude that plaintiff negligently failed to keep a proper lookout and if so, that such failure had a direct causal connection with the collision? Was the view of plaintiff obstructed as he approached the intersection? Did he see defendant's automobile as soon as he was able to see it and if he had kept a careful lookout, could it reaasonably have been expected and found that he would thereby have been able to have avoided the accident? Defendant says that under the evidence the answer to this last question should be "Yes". Plaintiff says there is no substantial evidence that he could have seen defendant's automobile had he been looking in time to have prevented the collision. In

determining this issue, which is the point most vigorously debated by the parties, we examine and incorporate herein pertinent parts from the testimony of plaintiff, defendant, Officer Jacobs and Lora Bean, custodian of the Second Baptist church, who saw the accident from about 75 feet away.

The plaintiff said he saw defendant's automobile "just at a split second" before it struck, "I was in the intersection before she was", her car was "approximately a car length away or two lengths from my car", when he saw it. It was his best judgment that when he first saw defendant's vehicle, "it was 15 to 20 feet south of the center of the intersection" and at that time he was "8 to 10 feet west of the west curb line of Lightburne". There was testimony that since the accident, Lightburne street has been widened "5 or 6 feet" and is now about 26 feet wide, so it previously was approximately 20 feet in width. He said his view was obstructed by the cars which were parked on both sides of Kansas street and by some bushes which stood in front of the house located at the southwest corner of the intersection. He did not attempt to spot the exact locations when one of these cars would first have come within view of the other.

Mrs. Hough testified that when her automobile was about "a car length from the intersection" she saw plaintiff's car and at that time "it seemed like it (plaintiff's car) was right in front of me". She stated that the parked cars and "some shrubs or a hedge along there running almost to the corner" obstructed the view. She did not estimate the distances from the intersection at which two automobiles—one going north on Lightburne and one coming east on Kansas—would first come within view of each other.

Officer Jacobs was familiar with the intersection. He was asked the following question by plaintiff's counsel and made the following reply:

"Q. Now, did you notice any obstruction on the southwest corner of that intersection which would tend to obstruct the view of both drivers? A. I don't recall any".

Defendant's counsel put this question:

"Q. And you have no recollection of there being any bushes or hedge or anything of that sort on the southwest corner there at the time of this accident, is that true? A. That's right".

Lora Bean was custodian of the Second Baptist church, which apparently was located in a square block, one corner being on the northwest corner of Kansas street at Lightburne. On the morning in question he said he was sitting in his automobile on the driveway "near the northwest corner of the intersection" and could see "down Lightburne street better than half a block and about half a block down Kansas". He said there was shrubbery at the southwest corner, "along the edge of the curb clear up almost to the corner", which was "a little over three feet high" and "it obstructed the view". A written statement signed by Mr. Bean soon after the accident contained this statement: "I did not see any evidence of either driver trying to avoid the collision".

Officer Jacobs found skid marks indicating that Mrs. Hough had applied her brakes 26 feet before the place of contact. While it is true that he did not recall the bushes at the southwest corner, the evidence establishes unquestionably that such bushes were there.

■ Defendant on appeal contends that plaintiff in his petition has "judicially admitted" that when the Janicke car was 20 feet west and the Hough car was 25 feet south of the intersection, the vehicles were intervisible. The petition was in three counts. Count 1 was based on defendant's failure to conform to the stop sign. Count 2, among other charges of negligence, included failure "to keep a lookout". Count 3 was under the humanitarian doctrine. It

alleged that when "the front end of his (plaintiff's) automobile was 20 feet from the westernmost curb of Lightburne street * * * defendant was approximately 25 feet from the southernmost curb of Kansas street". Defendant seeks to treat these pleadings under Counts 2 and 3 as judicial admissions that plaintiff could have seen defendant at these distances which, coupled with his testimony that he did not see her until later and when the cars were closer together, authorized the submission on failure to keep a lookout. Defendant pleaded contributory negligence generally. Plaintiff submitted his case under Count 1, that is, the alleged failure of the defendant to stop at the stop sign. We have studied the cases cited by defendant in which pleadings were held to constitute judicial admissions. None of those opinions, on their facts and their declarations of law, constitute a judicial precedent fitting and ruling the case before us. Plaintiff's alternative and abandoned pleadings (Counts 2 and 3) alleging locations of the vehicles, do not, in our opinion, constitute judicial admissions of such factual matters.

We have examined the record carefully in an effort to find any testimony or evidence that these two automobiles became intervisible in time for either to have seen the other and stopped or otherwise have avoided the collision, considering the speed at which they were traveling, so that failure to keep a lookout could reasonably be said to have been a cause of the accident. No witness gave any estimate as to the location at which the cars became intervisible. Plaintiff and defendant agreed that the parked cars and shrubbery "restricted" the view. Plaintiff and her counsel at one time both referred to the place as a "blind intersection". No attempt was made to show the distances within which either vehicle could have been stopped, considering speed and the wet street surface.

Suppose we were to accept the distances, as alleged in Count 3 of plaintiff's petition as a judicial admission concerning the distances from the intersection when the two vehicles first became intervisible, and there is no evidence whatever that the drivers could sooner have seen each other's car. Such supposition would place Janicke's vehicle 20 feet west "of the intersection", when he could first have seen defendant. Lightburne street was 20 feet wide. So, Janicke was 30 feet from the place of contact and traveling 20 to 25 miles per hour. At such speed he would travel approximately 30 feet per second and would, therefore, after three-fourths second (normal reaction time) have been only 8 feet from collision— would have had not more than one-third second within which to act.

It was stated in Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788:

"The courts will take judicial notice that when a situation demanding some action arises some appreciable time is required for a motor driver, a motorman or an engineer to react to the appearance of danger to begin to avoid the situation. Unless a longer time affirmatively appears in the proof the courts recognize that such reaction time is three-quarters of a second".

This court in Reed v. Burks, 393 S.W.2d 377, 380, held that 1.60 seconds was insufficient time in which a driver should be required to act and insufficient time upon which an instruction submitting "failure to keep a careful lookout" could be predicated. The court said:

"We have reached the conclusion that the stated facts do not present a submissible jury case on failure to keep a careful lookout. The jury in order to find Burks negligent by reason of failure to keep a careful lookout on the facts before it would have to engage in variable surmises and speculation as to what evasive action Burks could take in 0.85 of a second or less". (This after deducting reaction time).

Of course the jury here might have found (and properly so, we think) that Janicke was negligent in failing to slow for

the intersection and in driving at a speed which was not in the exercise of the highest degree of care considering all of the surrounding circumstances. However, the instruction permitted the jury to find him negligent for failure to keep a careful lookout. We find no evidence on which such a submission could properly be predicated, nor upon which it could be ruled that failure to keep a careful lookout was a causal factor of the collision. To have a submissible case more is required than a showing of a purely speculative possibility that a collision might have been avoided if a careful lookout had been maintained. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; Reed v. Burks, supra, 393 S.W.2d p. 380.

We conclude that it was error to include the issue of lookout in defendant's instruction on contributory negligence. The case must be retried.

The judgment is reversed and the cause is remanded.

SPERRY, C., concurs.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.