James E. BRACKEN, Plaintiff-Respondent,

v.

Robert R. KOCH, Defendant-Appellant.

No. 32194.

St. Louis Court of Appeals.

Missouri.

May 17, 1966.

Motions for Rehearing or for Transfer to Supreme Court Denied June 14, 1966.

Derrick & Holderle, St. Louis, for appellant.

Gordon W. Neilson, Lawrence O. Willbrand, St. Louis, for respondent.

TOWNSEND, Commissioner.

Action for damages for injuries to person and property resulting from an automobile collision. Verdict and judgment for plaintiff in the sum of $1500.00, from which defendant appeals.

The collision occurred at the intersection of Grand and Koeln Avenues in the City of St. Louis at about 7 o'clock in the evening, January 25, 1963. Grand Avenue at this intersection runs in a general north-and-south direction and Koeln Avenue runs east and west. There were no regulatory traffic signals or signs at the intersection; the speed limit on each street was 30 miles per hour. The day was cold and there was snow on the ground, but the traffic lanes on Grand Avenue were clear. Plaintiff was traveling south on Grand Avenue in the inside south-bound lane. He was traveling at about twenty-five miles an hour a half block north of the intersection, but as he approached it he slowed down his car. When plaintiff's car was ten feet north of the north curb line of Koeln he observed the condition of Koeln and states that the condition was similar to that of Grand Avenue and that there was nothing to obscure his vision. He looked to his left on Koeln and saw no cars of any kind; as he came somewhat closer to the intersection he looked to his right. His view to the right was unobstructed and he could see about one hundred feet in that direction. He saw no cars approaching on the right. Then entering the intersection at 15 to 20 miles per hour he states that he looked straight ahead "and then I looked back up to the right again, and by then I was fully into the intersection and I saw these lights of this automobile approaching me, I would say 15, 20 feet away." He saw no headlights at any time prior thereto. When he saw the lights of the Koch car the front of his car was about the middle of the intersection. At the moment of impact he was "just about through the intersection". Upon cross-examination plaintiff stated that although he was looking straight ahead after entering the intersection he could still see to the side or out of the corner of his eye and that he didn't see defendant's automobile until it was within 15 feet of his car. He then glanced to the right when he saw the lights of defendant's car. Otherwise he looked "up west on Koeln" only the one time previously mentioned when his car was 10 feet away from the intersection. Plaintiff's two-door car was struck on the right side at the door. The impact knocked plaintiff's car over to the left side of the street, where it struck a concrete light post on Grand Avenue. The lamp post was located 15 to 20 feet off of Koeln Avenue. Plaintiff estimated that defendant's speed was about 25 miles per hour as defendant entered the intersection.

Defendant moved for a directed verdict at the close of plaintiff's case and again at the close of all the evidence. On this appeal, defendant's attack is directed principally at the alleged contributory negligence of plaintiff, a matter appropriately preserved by defendant's motion to set aside the judgment or to grant plaintiff a new trial. Defendant contends that the evidence

clearly showed that plaintiff was negligent *as a matter of law* in failing to keep a proper lookout ahead and laterally as he entered the intersection.

█ No exercise in semantics can hide the fact that, absent some statutory fiat, the determination of whether a person has conformed to a prescribed standard of care rests in the opinion of the organ making the determination, whether we denominate the matter a question of fact or a question of law. There are no mechanical tests by which to solve the problem. Our system of law ordains this division of labor: Whether or not a litigant, has been guilty of negligence is a question for the jury to answer, unless, upon the basis of undisputed or clearly preponderant evidence, reasonable men could not differ. Cohagan v. Laclede Steel Co., Mo., 317 S.W.2d 452; Ely v. Parsons, Mo.App., 399 S.W.2d 613; Walker v. East St. Louis & S. Ry., 8 Cir., 25 F.2d 579. In considering defendant's assignment that plaintiff was guilty of contributory negligence as a matter of law, we proceed then to examine the evidence to see whether it is so commanding that it could lead reasonable persons only to that conclusion which defendant asserts, even if it is all viewed in the light most favorable to plaintiff.

A brief excursion into arithmetic will be of aid.

At the intersection Grand Avenue is 50 feet wide and Koeln is from 30 to 35 feet in width. Plaintiff looked to the right when he was 10 feet north of the north curb line of Koeln; he then proceeded straight ahead at 15 to 20 miles per hour without a further look to the right. When the front of his car was at the middle of the intersection which would have put it about 18 feet south of the north curb line of Koeln he saw the lights of defendant's car 10 to 15 feet away. This would have put defendant's car at the west curb line of Grand. Hence plaintiff would have proceeded about 28 feet before seeing defendant's car. If defendant's car had been just outside the range of plaintiff's

vision, namely, 100 feet, at the time that plaintiff looked to the right, that would mean that defendant's car had advanced at least 100 feet while plaintiff's car was traveling 28 feet. Defendant then traveled almost four times as far as did plaintiff after plaintiff took his look to the right. In the course of plaintiff traveling in distance of 28 feet, he proceeded at 15 to 20 miles per hour. If in the same period of time defendant traveled 100 feet then he must have proceeded at a rate somewhere between 53 and 71 miles per hour. There is no evidence that defendant traveled at more than 25 miles per hour after he entered upon Koeln Avenue and plaintiff estimated defendant's speed at that rate. The conclusion is inescapable that when plaintiff took his look to the right up Koeln Avenue the defendant's car was somewhere within plaintiff's range of vision. Reasonable men could not differ from a finding that at such time defendant was moving in the direction of Grand Avenue in plain view.

█ The statutory command that every motorist on the highways shall exercise the highest degree of care (Section 304.010, RSMo 1959, V.A.M.S) has as a necessary complement the proposition that a motorist rests under the duty of maintaining a careful and vigilant lookout ahead and laterally ahead. Weis v. Melvin, Mo., 219 S.W.2d 310. The latter duty is not negatived by those rules of the road dealing with priorities at intersections, e. g., first entry upon the intersection and the right and left positions of vehicles. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575 (and see Creech v. Blackwell, Mo., 298 S.W.2d 394, at p. 400); Major v. Davenport, Mo.App., 306 S.W.2d 626.

In the instant case plaintiff testified that his eyesight was good and that his view up Koeln Avenue was not obstructed. Nevertheless he states that he did not see defendant's car.

█ "The law is further well settled that 'a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly

visible when he looks, constitutes contributory negligence as a matter of law.'" State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915.

In two successive intersection collision cases, this Court passed upon the question of contributory negligence where the plaintiff either did not maintain a vigilant lookout or failed to see the approach of another vehicle well within plaintiff's range of vision. In Roux v. Pettus, Mo.App., 293 S.W.2d 144, plaintiff took a look to the right when 32 feet from the intersection and saw no approaching car. In Major v. Davenport, Mo.App., 306 S.W.2d 626, plaintiff looked to the right at some undetermined distance from the intersection (probably less than a block) and saw no approaching vehicle. Thereafter plaintiff in each case proceeded without a further look to the right, entered the intersection and was struck on the right side by the front of defendant's vehicle. In the Roux case, this Court stated:

"Under the authorities, we are compelled to hold that plaintiff was guilty of contributory negligence as a matter of law. When plaintiff reached a point 32 feet south of Oak Street he looked to the east for traffic approaching from that direction. At that point he could see as far as School Street, a distance of 320 feet. Defendant's car at that time must have been somewhere between School Street and Grant Street [on which plaintiff was traveling]. Yet plaintiff says he did not see it. He failed to see what was plainly visible to him. This was negligence on his part. Thereafter, plaintiff moved forward and almost across the intersection without again looking to his right until an instant before the vehicles collided. A failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible, constitutes negligence as a matter of law."

Similarly it was stated in Major v. Davenport, supra, that "Plaintiff, as she approached the intersection, was under a duty to watch for traffic approaching from the south and to see what was plainly visible. Failure to do so constituted negligence as a matter of law. * * * Whether she failed to look at a time when it would have been possible to look effectively, or negligently failed to observe defendant's truck approaching, is not quite clear from the evidence. In either event, plaintiff's conduct was negligent."

To the same effect is the case of Douglas v. Whitledge, 302 S.W.2d 294, in the Springfield Court of Appeals. In another passage the latter Court dealt with the failure to see in the following manner: "Whether plaintiff's brother actually saw defendant's pickup before proceeding into the intersection is not material to proper determination of this appeal. For, where there is a duty to look, the driver of a motor vehicle is as negligent in failing to see that which could have been seen in the exercise of due care as in failing to look at all * * * and the failure to see what is plainly visible constitutes negligence as a matter of law." James v. Berry, Mo.App., 301 S.W.2d 530.

■ Accordingly it must be held that under the evidence adduced in this case plaintiff was guilty of negligence.

■ But to find that the plaintiff was guilty of negligence as a matter of law is not to conclude the matter of contributory negligence. The problem of causation still remains. The very words—contributory negligence—connote that a plaintiff's negligence caused or contributed to cause his own injury.

■ Whether the question is one of submissible case based on negligence or one of a defence based upon contributory negligence, the burden rests upon the proponent to show the relationship between the negligence and the injury suffered. Deviation by a defendant from the prescribed standard of care does not alone make out a case for a plaintiff; nor does a plaintiff's failure to conform to that standard alone establish a defence for a defendant. To accomplish

either result the causal connection must be shown. The proposition is so obvious that it is not necessary to pile precedent upon precedent to demonstrate its truth. Solely for purposes of illustration we cite cases dealing with the duty to maintain a vigilant lookout. In Thaller v. Skinner and Kennedy Co., Mo.App., 307 S.W.2d 734, it was held that the trial court erred in not sustaining defendant's motion for a directed verdict; the Court stated that at a certain point defendant's driver should, by keeping a careful lookout, have seen plaintiff in apparent danger. "But that fact alone was not sufficient to make a case. It was incumbent upon plaintiff to also show that defendant's driver had the ability thereafter to avoid the collision. Otherwise, there was no showing of proximate cause * * *." It was observed that there was no evidence concerning the distance it would take to stop defendant's truck under the existing conditions, and so, "In the absence of such evidence, there was no proof that the proximate cause of plaintiff's injuries was the truck driver's failure to keep a lookout and to stop his truck."

In Janicke v. Hough, Mo.App., 400 S. W.2d 645, where contributory negligence was relied on, the Court deemed it important to determine whether the record afforded any evidence that the colliding automobiles became inter-visible in time for either to have stopped or otherwise to have avoided the collision. An instruction permitted the jury to find plaintiff negligent for failure to keep a careful lookout. The Court said: "We find no evidence * * * upon which it could be ruled that failure to keep a careful lookout was a causal factor of the collision. * * * We conclude that it was error to include the issue of lookout in defendant's instruction on contributory negligence."

The record in the present case is barren of any evidence that by maintaining the proper lookout plaintiff could have avoided the collision. There is no evidence as to the distance within which he could have stopped his car if he had seen the defend-

ant at the time when the law charges him with such a sight. There is no evidence as to any manner in which he could have otherwise avoided the collision under the existing conditions. Hence, to repeat what was said in Janicke v. Hough, supra, "We find no evidence * * * upon which it could be ruled that failure to keep a careful lookout was a causal factor of the collision."

The second point made by appellant was that the Court erred in receiving in evidence over appellant's objections the records of St. Louis City Hospital pertaining to respondent's admission and injuries. Subpoena was issued to the medical record librarian of St. Louis City Hospital who did not appear; instead she sent Mrs. Sid Hampel with records relating to respondent. Mrs. Hampel testified that the records were under her supervision and control and that the record librarian "sends me on these trips" because "she doesn't have the time". Asked how often she had come into court "like this", she responded: "Thousands of times".

After several general objections by defendant's counsel on the ground that the records were not admissible under the Business Records Act, an objection that went principally to the qualifications of the witness, had been overruled, the Court overruled objections to specific items in the respondent's file, namely, the emergency and admitting record and an X-ray. The court then addressed counsel: "Why don't you have this introduced in evidence, show him what you want to read and read it yourself to the jury and let him make any objections he wants to make to any portion you want to read?" Plaintiff's counsel: "We are going to offer these into evidence." Defendant's counsel: "I made objections to them already." The Court: "Objection overruled. They will be received as far as the authenticity is concerned, and I will permit the defendant to make any specific objections to any particular portions that he attempts to read or give to the jury." After cross-examination of the witness by defendant's coun-

sel, the latter said: "I just want to renew my objection to be sure I have got a foundation laid." The Court: "Objection overruled. They will be received, subject to the qualifications which have already been made."

 From this point forward there is nothing in the record to indicate that any part of the items objected to was read to the jury or was in any way exhibited to the jury. We find nothing that shows that plaintiff made any attempt to utilize such exhibits. Nevertheless defendant has briefed the point. If defendant intends to complain here of the mere receipt of the items in evidence without any attempted use of them and if such receipt be regarded as error it is not difficult to label such receipt as harmless error.

Lastly, appellant maintains that the Court erred in refusing to declare a mistrial because of repeated improper and inflammatory remarks by plaintiff's counsel in his closing argument. It is the opinion of this Court that plaintiff's counsel is deserving of severe censure for his conduct in attacking, both directly and by innuendo, the integrity of opposing counsel and of a witness. Counsel's abusive language ranged from charges of intentional deception to deliberate omission of a word from a statement to twisting. Upon five occasions defence counsel objected to statements of plaintiff's counsel and upon each occasion the objection was sustained and the jury instructed to disregard counsel's statement. Despite the admonition implicit in the Court's sustaining of objections to portions of his argument, counsel persisted in his objectionable personal references. Zealous pursuit of the interests of one's client cannot justify invective or reprehensible references to one's opponent. Counsel not only violated the elementary principle that in argument he must keep within the evidence and that his language must be justified by the record; he chose repeatedly, despite sustained objections, to go outside the record and to indulge in highly objectionable personalities. It might be said that his conduct bordered on contumacy.

Whether or not the persistent misconduct of counsel had the cumulative effect of inflaming the jury to the prejudice of defendant required a determination which could only be referred to the sound discretion of the trial judge. He had the jurors before him and thus was in a position to observe the effect, if any, upon them,— whether of cogency or of ludicrous exaggeration. Observing them in the flesh and drawing conclusions therefrom is entirely different from endeavoring to determine their reactions from the typewritten page. We cannot say that the trial court erred in refusing to declare a mistrial.

The judgment should be affirmed.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.