Myrtle CALVERT, Appellant,

v.

SUPER PROPANE CORPORATION, a corporation, d/b/a Camden S. P. Gas Company, and Basil Dean, Respondents.

No. 51281.

Supreme Court of Missouri, Division No. 2.

Feb. 14, 1966.

Opinion Modified on Court's Own Motion and Motion for Rehearing or for Transfer to Court En Banc Denied March 14, 1966.

Morgan M. Moulder, Camdenton, for appellant.

Donnelly & Donnelly, David Donnelly, Lebanon, for respondents.

PRITCHARD, Commissioner.

In this $25,000 action for damages for the wrongful death of plaintiff's husband, George William Calvert, the trial court directed the verdict and entered judgment against plaintiff and in favor of both defendants. The grounds upon which the court acted were that the deceased was contributorily negligent as a matter of law in being on the wrong side of the road, and that there was no evidence of any negligence of Basil Dean, the driver of the pickup truck involved in the head-on collision with deceased.

The witnesses gave the following testimony relative to the issues on this appeal:

Howard Parrish, who lives and operates a store at the junction of Highway 5 and the old Ha Ha Tonka road, saw deceased at his store on the afternoon of December 16, 1963. Later Parrish delivered a load of wood and then returned by way of the Ha Ha Tonka road. He came upon and saw two vehicles in front of the Homer ("Jack") Martin home, a pickup truck and a 1956 Chevrolet, the latter being pointed west and the former being pointed east. Both vehicles were on the south part of the road in the single set of tracks or ruts, and after they hit they were approximately two feet apart. It had been snowing and freezing, but the road was passable. There was just one track of ruts all the way from the junction and beyond the Martin home which all traffic was using. The road was of gravel, with no marked center line. Parrish passed the vehicles and made another set of tracks. He had to go around the north side of the road to get around them, and there was plenty of room therefor.

Earl Calvert, son of plaintiff and deceased, arrived at the scene after dark with Trooper Ralph Rider. He saw his father's car and the S. P. Gas Company's truck head

on in front of the Martin home. The Chevrolet's left front fender was driven back 15 to 16 or 17 inches; the right front fender was not damaged and its headlight was still in place; and the radiator was pushed back a foot or two over the motor. He measured the width of the Chevrolet to be six feet.

In front of the Martin home the road is 18 to 20 feet wide. The road was slick and icy, but Earl could not say which side of the highway had been traveled because there had been several cars there before he arrived. The Chevrolet was sitting with its back toward the middle, the north side, and with reference to the center of the roadway the front of it was a little past the center to the south. The S. P. Gas truck was to the west of the Chevrolet and immediately in front of it and both vehicles were in the traveled tracks in front of the house.

Homer ("Jack") Martin, who lived one-fourth of a mile from Highway 5 on the Ha Ha Tonka road, came home from work about 4:00 or 4:30 p. m., and saw the two automobiles which had been involved in a collision in front of his home. There were no people then present. He arrived before the cars had been moved. The road was wet, snowy and icy and there were single lane tracks which staggered or weaved back and forth in the middle of the road, but which were located approximately in its center. The snow was soft and wet on the right and left of the traveled portion. At the scene of collision the south track was a little bit closer to the ditch than the north track. Both the Chevrolet and the S. P. Gas truck were sitting in the one set of tracks which had been made, and the tracks were in the center of the road, and with relation to the center the back end of the S. P. Gas truck was a little north. When the photographs of the scene were taken he stood in the position, as shown thereon, where he saw the vehicles.

Mrs. Ruby Martin, wife of "Jack" Martin, was in the kitchen of her home about 3:30 p. m., on December 16, 1963. The window of that room faced west and at that time she saw a pickup truck traveling in an easterly direction. She picked up a coffee pot from the end of the dining table in the kitchen and took it to the heating stove in the front room, six or seven steps, and at that time she heard a crash which shook the windows. Immediately afterwards she went to the edge of the road and helped bring Mr. Calvert into her house. On cross-examination she testified that she formed a judgment that the pickup truck was going approximately 30 to 35 miles per hour.

R. W. Vincent, the County Surveyor, testified that he measured a distance of 660 feet from an automobile parked on the county road (to the west of where Mr. Martin found the vehicles), as shown in the photograph, Plaintiff's Exhibit 5, to the point of the location of the collided vehicles where Mrs. Martin was standing. The objection of this testimony upon the ground that "the positions respecting the terminal points have not been identified," was overruled. Mr. Vincent testified that the rate of speed to go 660 feet in 6 seconds is 75 miles per hour, and in 7 seconds 69.3 miles per hour.

Defendant Basil Dean testified that on the day of the collision he had been delivering gas on the Ha Ha Tonka road, and was returning when the collision occurred. The point of collision, with reference to the "Jack" Martin home, was just west thereof on the side of the hill. His speed was approximately 15 to 20 miles per hour. There was only one portion of the road where all the traffic was traveling, and the part of the road, right or left (of the tracks), was usable to pull over to pass; it was snowy and slick. In the collision the left sides of both vehicles were damaged. When he first saw the Calvert car (the top of it east of the hill) Dean was 120 feet from the point of collision, and one and one-half to two seconds elapsed from the time he first saw the Calvert car until the collision occurred. Dean's brakes were work-

ing at the time. He hit the brakes and the truck slid, and he attempted to swerve to the right but the truck would not swerve.

The photographs taken later, admitted into evidence and with testimony related thereto, show that the general terrain of the Ha Ha Tonka road in the vicinity of the collision was unchanged from the time thereof. From the west the roadway inclines downward, then upward, on a rather long curve to the left some distance to the point where the vehicles were found. In front of the Martin home is the peak of a small hill.

On rebuttal, Arval Crall testified. He went out to the scene to help and to stop traffic coming over the hill. He found the Ha Ha Tonka road about as slick as he ever drove on, and there was just one lane, one path for the trucks, and to the right and left thereof there was just ice and snow— "[I]t was just rough that wasn't driven into." The cars were sitting practically in the one beaten path. On the left-hand side, as one goes west (as was Mr. Calvert), there was approximately 3 to 4 feet to the left side of the bank, and to the other side it was 7 or 8 feet. With reference to the center of the road, probably one-third of his car was on the north or his right side of the road.

■ Assuming, as defendants contend, that Mr. Calvert was not driving his Chevrolet upon the right half of the roadway, and that such was contrary to § 304.015, subd. 2, RSMo 1959, V.A.M.S., which provides, "Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, * *" (after which follows statutory exceptions), and noting further that the jury could find same to be contributory negligence, yet we cannot, under this record, hold that such would amount to contributory negligence as a matter of law. Under all of the evidence regarded as true and beneficial to plaintiff, these facts existed: That this was a narrow, graveled, rural county road, 18 to 20 feet wide, with a graded portion 14

feet wide; that at the time of the collision the road was being used by the traveling public in a single two-track lane which was located approximately in its center, but which at the scene of the collision came within three or four feet of the left (south) bank of the road; that the whole of the Ha Ha Tonka road was, on the day in question, hazardous to driving, slick and icy (about as slick as witness Crall ever drove on), with soft, wet snow on either side of the beaten, traveled lane, which roadsides were "just rough that wasn't driven into." Upon finding these facts the jury could have concluded that deceased was not negligent in following the single, two-lane track that *everybody* on this country road was using, and that if the soft, wet snow on either side of the traveled track were used it would be more hazardous to deceased's safety than the traveled portion. Whether deceased did what any reasonable man would have done in following the tracks, or whether he should have, in the exercise of the highest degree of care for his own safety, driven into the rough, soft and wet snow on the sides to the track, was for the jury to determine under all of the facts and circumstances. This is an issue upon which reasonable minds might reach different conclusions, and taking of the same away from the jury constituted error. Capriglione v. Southwestern Bell Telephone Co., Mo., 376 S.W.2d 205; Tharp v. Monsees, Mo., 327 S.W.2d 889.

We are cited by plaintiff the case of Tener v. Hill, Mo.App., 394 S.W.2d 425. There it was contended that plaintiff's driver (a coadventurer) was guilty of negligence as a matter of law in approaching and entering an intersection on the south, left or wrong side of the road in violation of said § 304.015, subd. 2. Plaintiff's evidence there tended to show that the part of the 23rd Street (upon which her driver was traveling) north of the center line and east of the intersection was impassable, and that he drove south of a manhole cover because it protruded above the surface and constituted a dangerous obstruction. There were several descriptions of the condition

of the surface (as here, that the sides of the road were icy, wet snow and "rough that wasn't driven into," as against defendants' evidence that the sides of the road could be negotiated in safety by passing vehicles). The court went on to say that it was a jury question whether plaintiff's driver followed the tracks into and through the intersection out of necessity or for considerations of safety, and we likewise hold that these considerations in the case at bar were for the jury.

Some of the older cases under repealed (in 1953) § 304.020(2), RSMo 1949, V.A.M.S., providing that "All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable," are helpful to plaintiff's position here. In Moss v. Stevens, Mo., 247 S.W.2d 782, a truck driver was sought to be charged in a refused instruction with the statutory violation in passing a parked tractor from whence the decedent there came under the rear wheels of the truck and was killed. The accident happened on a county road with one lane of travel. This court, in holding the instruction properly refused, said, loc. cit. 785 [3, 4]: "The county road on which the accident occurred, according to plaintiffs' and defendant's witnesses, was a one lane highway with but two wheel tracks. * * * The requirement to operate motor vehicles 'as close to the right-hand side of the highway as practicable' * * * does not receive a literal construction but has reference to the attending circumstances and to the usable or passable way." In Hadley v. Smith, Mo.App., 268 S.W.2d 444, the plaintiff drove from a north-south, one-lane, two-wheel tracked, gravel road, with soft or loose gravel at its edges, into an intersection, and it was claimed that he was contributorily negligent as a matter of law, which contention was denied, the court saying, loc. cit. 448 [2], that the statute [§ 304.020(2), supra] had reference to the attending circumstances and to the usable or passable way, and the fact that plaintiff admitted that his car was in the one-lane, usable or passable

way, did not convict him of negligence as a matter of law. See also Harmon v. Fowler Packing Co., 129 Mo.App. 715, 108 S.W. 610, a street obstruction case; Darnell v. Ransdall, Mo.App., 277 S.W. 372; and see Miles v. Gaddy, Mo., 357 S.W.2d 897, 902 [4], for other recognized "excuses" or "excusable violations" (of an emergency nature) of statutory violations.

Defendants cite and rely upon Justice v. Malin, Mo., 336 S.W.2d 77. In that case, although the evidence concerning the scene of collision showed that the two hills, the approaches thereto, and the hollow between them were covered with a coating of ice, over which was a thin layer of snow, there was no evidence that the traveling public had been using a single, two-track lane with soft, wet snow to either side thereof, as we have here. In the Justice case there was no evidence of why decedent suddenly changed the course of his car and drove directly into the path of defendant's car, there was no evidence of the rate of speed of either car or the distance between the hills, or where defendant's car was when decedent's car came over the hill which was south of the hill upon which the collision occurred in decedent's wrong lane. Hence the court held, and properly so, that plaintiff's evidence, standing alone and unexplained, convicted decedent of negligence as a matter of law. Here, the facts and circumstances of the traveled two-track lane and hazardous sides of the road, as the jury could find, tend to explain why deceased was on the south (left) portion of the roadway, and these facts and circumstances, not present in the Justice case, distinguish it.

■ With respect to the propriety of the trial court's action in directing a verdict against plaintiff because of no evidence of any negligence of defendant, Dean, we examine the record and view all of the evidence in its light most favorable to plaintiff (as we have done also on the issue of deceased's contributory negligence). Christie v. Gas Service Company,

Mo., 347 S.W.2d 135, 137 [1]; Kettler v. Hampton, Mo., 365 S.W.2d 518. If the evidence reveals with any substantiality any pleaded theory of defendants' negligence, then a submissible case thereof was made. Reynolds v. Thompson, Mo., 215 S.W.2d 452; Nelson v. Wabash Railroad Company, Mo., 300 S.W.2d 407. One alleged ground of primary negligence of defendant, Dean, is that he "Operated and drove said G.M.C. motor vehicle at a high, reckless, rapid and dangerous rate of speed under the circumstances then and there existing." The evidence most beneficial to plaintiff as to the speed at which Dean was driving the pickup truck may be computed from his testimony that he was 120 feet away from the point of collision when he first saw the top of Mr. Calvert's Chevrolet over the hill, and that 1½ to 2 seconds elapsed from the time he first saw him until the collision occurred. This testimony of distance and time would place his speed from 40.9 miles per hour to 54.5 miles per hour prior to collision. Mrs. Martin testified that she formed a judgment as to the speed of the truck when she saw it through her kitchen window of 30 to 35 miles per hour, which would have been as it approached the point of impact from some precisely unknown distance to the west. The slope was there down hill. We attach no importance to the computation of speed by witness R. W. Vincent as having no probative value. Defendants' objection thereto on the stated ground, supra, should have been sustained.

▆ Defendants contend that there was no showing that the speed at which Dean was driving was the proximate cause of the collision. It is argued, and the quote is made from Miller v. Fink, Mo.App., 387 S.W.2d 173, 176, "Plaintiff states there is no evidence whatever to show that if plaintiff had entered the intersection at a slower speed that the collision could have been avoided and cites the case of Copher v. Barbee, Mo.App., 361 S.W.2d 137, 148, which sets out the general test of causal connection between negligence and injury. To be more specific, it should be noted that the courts of this state have held that excessive speed is not the proximate cause unless it prevents the operator of the vehicle traveling at the excessive speed from avoiding the accident. It must be shown therefore that the collision and resulting injuries would not have occurred except for the excessive speed shown by the evidence." There is also the rule, conceded by the parties here, that the rule requiring the causal connection of excessive speed and injury does not require direct, specific proof. Miller v. Fink, supra, loc. cit. 387 S.W.2d 176 [3, 4], wherein the case of Watt v. St. Louis Public Service Company, Mo., 354 S.W.2d 889, 891, is quoted. We take the rule, that direct, specific proof of causal connection between excessive speed and injury is unnecessary, to mean that a party need not always prove *at what* slower speed the injury could have been avoided. "It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred." Watt v. St. Louis Public Service Company, supra, loc. cit. 354 S.W.2d 891 [1–3]. In Berry v. Harmon, Mo., 329 S.W.2d 784, 789 [2–4], we said, "Whether a particular speed, not unlawful by reason of statute or ordinance, is excessive depends upon the condition of the highway and all the surrounding circumstances and conditions existing at the time. Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118(9, 10); Wood v. Claussen, Mo.App., 207 S.W.2d 802, 809(4, 5); Ritchie v. Burton, Mo.App., 292 S.W.2d 599, 604." See also Steele v. Goosen, Mo., 329 S.W.2d 703, 710 [8–10], where it was held that a case was made for the jury on negligent speed (driving 50–55 miles per hour) by plaintiff's admissions and testimony as to facts and circumstances existing north of a "patch of fog" on the highway; and Greenwood v. Vanarsdall, Mo.App., 356 S.W.2d 109, 112 [1–3], where it was said that excessive speed may be proved by circumstances, and skidding, when combined with surrounding circumstances, may be sufficient to justify the inference of a high and dangerous rate of speed.

A speed of 40.9 to 54.5 miles per hour, or even that estimated by Mrs. Martin of 30 to 35 miles per hour, under the circumstances of this hazardous, slick road, whereon there was a single two-track lane upon which Dean was traveling, with soft, wet snowy areas either side thereof, and upon which he could anticipate that some vehicle coming from the opposite direction might also be using, was one fraught with danger unless Dean drove at such a reduced speed that he could stop or otherwise control his pickup truck so as to avoid a suddenly appearing oncoming vehicle. These facts and circumstances, and that of Dean's actual slide when he put on his brakes, are sufficient to support an inference of excessive speed, and to show a causal connection between such speed and the injury to plaintiff's husband. A submissible case was made as to the assignment of negligence of excessive speed and the trial court erred in directing a verdict for defendants thereon.

No submissible case was made upon plaintiff's assignment of humanitarian negligence of Dean's failure to slacken his speed (which he testified to have been 15 to 20 miles per hour when he saw the top of Mr. Calvert's car over the hill), or to have stopped prior to collision after it became apparent that deceased was in a position of imminent peril of being injured. Although there was evidence that Dean saw the top of the oncoming Chevrolet over the hill, there was no evidence that it was then on the wrong side of the road, and that it would continue thereon in the traveled tracks. The distance from the point of collision east to Mr. Calvert's car was not shown, nor was his speed in evidence. Under this state of the record the jury would have to speculate and conjecture as to when Mr. Calvert came into a position of imminent peril, which means certain, immediate, and impending, and not remote, uncertain or contingent, and likelihood or bare possibility of injury is not sufficient to create "imminent peril." Ornder v. Childers, Mo., 327 S.W.2d 913, 916 [3]; Wilson v. Toliver,

Mo., 305 S.W.2d 423, 427 [1, 2]. Because there was no evidence that deceased was in a position of imminent peril at the time Dean first saw him, even though he may subsequently have come into such position —i. e., to be *then* discovered by Dean on the wrong side of the road and pursuing his course to impact, there is no showing of any distance and time after Dean first saw the top of the Chevrolet within which and with the means and appliances at hand that Dean (obviously moving toward deceased's Chevrolet after he first saw him) could have, with safety to himself, averted the collision. Thus the whole matter is left to speculation and conjecture, and no situation was shown in evidence upon which the humanitarian doctrine would seize.

Plaintiff's remaining point deals with the exclusion of testimony by the trial court. Although plaintiff made a general assignment of error with respect thereto in her motion for new trial, she made complete offers of proof during the trial, and in view of Civil Rule 79.03, V.A.M.R., that "Where definite objections or requests were made during the trial in accordance with Rule 79.01, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient," sufficiently preserves the same for review. Defendants' contention that the propriety of the court's action in excluding evidence is not before us is therefore overruled.

Plaintiff offered to prove that deceased made statements sometime after the collision to the attending physician in Camdenton, Missouri, relative to the facts of the collision. Such statements were hearsay and not a part of the res gestae as claimed. There was no proof, or offer of proof, as to the condition of deceased during the interim. The same as to statements made by deceased in the presence of plaintiff some 40 minutes after the collision. There is no evidence of spontaneity of deceased's statements, nor a sufficient offer of proof relative thereto, which would

supply that necessary element of a res gestae statement. Compare Leahey v. Cass Ave. & F. G. Ry. Co., 97 Mo. 165, 10 S.W. 58, where it was held that statements made by a deceased boy as to how he was injured after he had been removed from the scene of the accident, and the persons connected with the accident were separated, were inadmissible; Robyn v. New Amsterdam Casualty Co., Mo.App., 257 S.W. 1065, where deceased's statements made sometime after the accident and after arrival at another's home, were held to be a mere recital, or narrative of a past event, and were no part of the res gestae; Venters v. Bunnell, 230 Mo.App. 1190, 93 S.W.2d 70.

■ Another offer of proof was made concerning a re-enactment, or test, of the movements of Mrs. Ruby Martin ostensibly in order to time her from when she observed a truck on the Ha Ha Tonka road from her kitchen window until she had walked to her living room where she placed a coffee pot upon the heating stove therein, at which time she heard the crash of the collision. The admission of evidence of such re-enactment, or test, was a matter peculiarly within the discretion of the trial court, Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918, 921. Although the conditions of the test were shown to be substantially the same as those existing at the time of the collision, Cook v. St. Joseph Ry., Light, Heat & Power Co., 232 Mo.App. 313, 106 S.W.2d 38, and were admissible, there was no abuse of discretion in view of Mrs. Martin's received testimony that she made 6 or 7 steps and 6 or 7 seconds elapsed from the time she saw the truck in the road until she heard the crash.

The judgment is reversed and the case is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.