Melvin Eugene HOOD, Plaintiff-Appellant,

v.

John Herman HEPPLER, Defendant-
Respondent.

No. 34929.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Dec. 11, 1973.

Melvin D. Benitz, St. Charles, for plaintiff-appellant.

Joseph M. Kortenhof, St. Louis, for defendant-respondent.

McMILLIAN, Judge.

This is an action for personal injuries as a result of an automobile collision at a "T" intersection of St. Charles Rock Road and Industrial Park Drive in St. Louis County, Missouri. Judgment was entered by the Circuit Court of St. Louis County on a jury verdict in favor of defendant.

Plaintiff claims that the trial court erred (1) in the reception of evidence in violation of the "collateral source rule," the reception of hearsay testimony and reception of evidence without the proper foundation; and (2) in the giving and refusal of instructions. We have read the transcript and the briefs and find no substantial error. Therefore, we affirm. In view of the issue thus presented we will set out the facts bearing on the same and review the evidence in the light most favorable to defendant.

The accident occurred on May 29, 1969, at or about 5:00 P.M., about one mile east of the old Missouri River bridge at a "T" intersection of St. Charles Rock Road, a four-lane, east-west highway, each lane 10 feet wide, with a 6 foot shoulder, with In-

dustrial Park Drive, a north-south road, approaching St. Charles Rock Road from the north, but not extending south thereof.

Prior to the accident, plaintiff had just spent about forty-five minutes in a bar where he had drunk one beer. Plaintiff was traveling east on St. Charles Rock Road. When he was about a quarter of a mile east of the bridge, he crossed over into the passing lane (first lane south of the middle line). Westbound traffic was heavy and cars were backed up bumper to bumper for a mile from the bridge to Industrial Park Drive and beyond. As the plaintiff approached Industrial Park Drive, defendant was proceeding southwardly across the westbound lanes of Rock Road. A gap in the westbound traffic had been created and defendant was waved through. As he proceeded across the center line the collision occurred. Plaintiff says he first saw defendant's automobile bumper at the center line when he (plaintiff) was sixty feet west of the point of impact, and at that time he was traveling in the eastbound lane at a speed of 40–45 miles per hour. At the time of the collision plaintiff testified that he had reduced his speed to 30–35 miles per hour. Plaintiff testified that defendant's car was coming out, easing forward, when he first saw it; and finally that defendant was one and one-half to two feet south of the center line when he first saw it. There was no estimate as to the time interval between the time he first saw the defendant and the time of the impact. The reason plaintiff could not have seen defendant's car sooner was because his vision was blocked to the north because of the stopped, bumper to bumper traffic to his left (north). Plaintiff fixed defendant's speed at 2 miles per hour; the impact occurred on defendant's right front bumper and to plaintiff's left rear bumper; that the collision occurred as he attempted to swerve right (southward).

Defendant testified that he was waved through a line of parked cars; that he crept (southwardly) up to the center line and could not see to his right (westwardly) be-

cause of the westbound car to his right; that when he was one and one-half feet over the center line, he saw a small car roof, windshield and hood of a car approaching one hundred feet away (westwardly) in the middle or passing lane. He was unable at that time to estimate plaintiff's speed other than it was coming "pretty fast." As plaintiff's car went by, it clipped or "pinged" the front bumper of defendant's car. At impact, defendant estimated plaintiff's speed to be about ten miles per hour; after the "ping" plaintiff's vehicle went across the highway (southwardly) to a point thirty to thirty-five feet east of Industrial Park Drive, to the shoulder and traveled ten feet on the shoulder, and returned (northwardly) to a head-on collision with a westbound vehicle in the center lane, one hundred feet east of Industrial Park Drive. Defendant says that his car had been stopped for one to five or six seconds at the time of impact; and that he could have avoided the accident by backing up one and one-half feet or one inch.

Regina Neuhaus, a witness for defendant, who was driving westwardly on Rock Road, saw plaintiff's automobile weaving from one side of the eastbound lane to the other. Her best judgment fixed plaintiff's speed at eighty to ninety miles per hour.

Trooper James V. Wheeler testified that plaintiff told him that he was traveling at the speed of fifty to sixty miles per hour.

■ Plaintiff's first claim of error centers around the fact that defendant, over objection, was permitted to show that plaintiff's medical expenses and care were free since he was a veteran in a governmental hospital. Plaintiff argues that since he was a veteran by his service he had earned and was entitled to medical care; therefore it was impermissible for defendant to be allowed to reduce or mitigate damages when the source is wholly independent of plaintiff. Even if we assume that Missouri courts will not allow a tortfeasor to show in mitigation of an injured person's dam-

ages benefits received by the injured person from a source wholly independent of and collateral to the tortfeasor, we find in this case plaintiff was not prejudiced by the admission of such testimony. Here, inasmuch as the jury found against plaintiff on the issue of liability and plaintiff's injuries undeniably were substantial, we must conclude that the jury never reached the issue of damages. Robinson v. Richardson, 484 S.W.2d 27, 32 (Mo.App.1972); Mead v. Grass, 461 S.W.2d 708 (Mo.1971). Accordingly, we find no prejudicial error in the respect claimed by plaintiff.

■■■ Secondly, plaintiff argues that it was error for the court to permit Officer Wheeler to testify as to the speed recorded on the patrol report. Officer Wheeler testified that he neither made the report nor put the rate of speed of plaintiff's automobile into the report, but he did give the statement of speed to Officer Biele, who prepared the report. In any event, Officer Wheeler finally testified, without either an objection or a motion to strike, that plaintiff told him, immediately after the accident at the hospital, that he was traveling fifty to sixty miles per hour. Therefore, we do not reach plaintiff's claimed error, because the statement made by plaintiff is clearly admissible as an exception to the hearsay rule; i. e., the statement of party-opponent. Stegall v. Wilson, 416 S.W.2d 658 (Mo.App. 1967); Wigmore, Evidence, §§ 1048–1087; Morgan, The Rationale of Vicarious Admissions, 42 Harvard L.Rev. 461 (1929). Consequently, we rule this issue against plaintiff.

■■■ Third, we take up plaintiff's claim of the insufficiency of the evidence to submit defendant's instruction of plaintiff's excessive speed as the proximate cause of the accident. Questions of proximate causation are for the jury. Buzbee v. Greyhound Lines, Inc., 467 S.W.2d 933 (Mo.1971). To decide whether a defendant's instruction is supported by substantial evidence, we consider the evidence in the light most favorable to defendant and disregard all unfavorable evidence. Janicke v. Hough, 400 S.W.2d 645 (Mo.App.1966).

■■■ Applying the above standard to the evidence, we find that plaintiff drove in the lane next to the center line at speeds estimated at eighty to ninety miles an hour, seventy miles per hour, and fifty to sixty miles per hour. Plaintiff himself testified that he had good control over the vehicle and "could swerve it," "could brake it," and generally "could handle it." In Marshall v. Bobbitt, 482 S.W.2d 439 (Mo. 1972), the court stated as follows:

"The questions raised on this appeal: whether the case was properly submitted on excessive speed. . . .

"The proper test of speed as a proximate cause of a collision is whether the speed prevented the driver from avoiding the collision . . . The trouble is that Bobbitt did not see the pickup truck until he was 160–175 feet south of the side road. . . and that at the high speed he was traveling he was prevented from taking effective preventive measures. . . Had he done so and had he been traveling at a reasonable speed it could reasonably be found that he could have applied the brakes sooner than he did, . . . and Bobbitt would have had more time to steer to the right in avoidance. . . ."

Plaintiff said that he first saw defendant's car when he was sixty feet away and that the traffic lane to his right was clear. Hence, a jury could reasonably find that if plaintiff had not been going at a speed of eighty to ninety miles per hour, sixty feet would have been a sufficient distance for him to have swerved his vehicle to his right. And thus avoid defendant's car altogether, which, according to defendant, was only a foot to a foot and a half south of the median between the east and westbound traffic lanes. Thus, we rule this point against the plaintiff.

Turning to plaintiff's fourth complaint, he argues that the court erred and abused

its discretion by permitting defendant to read portions of a hospital record without laying a proper foundation. The claimed tainted portion being as follows:

"Past History  . . .

"At this time unobtainable. Patient was very difficult to handle. Irrational and appeared to be under the influence of alcoholic beverages."

■ It was plaintiff who introduced, without any objections, the hospital record as an exhibit into evidence. Yet the fact that the record was introduced into evidence pursuant to the Missouri Business Records as Evidence Act, § 490.680, RSMo 1969, V.A.M.S., does not make admissible into evidence those matters contained therein which would otherwise not be admissible. Stewart v. Sioux City & New Orleans Barge Lines, Inc., 431 S.W.2d 205 (Mo. 1968). Nonetheless, plaintiff, at the time defendant read the claimed tainted portion of the record admittedly made no specific objection, except that the alleged tainted portion was repetitious. Thus, we deny plaintiff's claim of error in this regard since a trial court may not be convicted of error where no objection was ever presented to the court. Pierce v. New York Cent. R. Co., 257 S.W.2d 84 (Mo.1953); Browning v. City of St. Louis, 384 S.W.2d 868 (Mo.App.1964). Additionally, the evidence as to defendant's drinking had been testified to by Officer Biele; so if error, it was not prejudicial because the facts established are already in evidence by other competent evidence, Harris v. Goggins, 374 S.W.2d 6 (Mo.Banc 1963).

■ Finally, we consider plaintiff's claim that the court erred by refusing his humanitarian submission on failure to stop and failure to back up. The refused instruction submitted disjunctively a negligent failure to stop or back up. Obviously both charges of negligence must be supported by evidence; and if either one is not, the court may properly refuse to submit the instruction to the jury. Hardy v. St. Louis-San Francisco Railway Co., 406 S.W.2d 653 (Mo.1966).

■ In considering whether plaintiff made a submissible case on either theory, we consider the evidence in the light most favorable to plaintiff, even though defendant had the verdict. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3, 4] (Mo. Banc 1953); Carlson v. St. Louis Public Service Co., 358 S.W.2d 795 (Mo.1962).

Plaintiff testified that defendant moved over the center line and was moving at the time of impact at a speed of about 2 miles per hour. And, he first saw defendant's vehicle and first could have seen it when plaintiff's vehicle was sixty feet away going at a speed of forty to fifty miles per hour. Plaintiff also stated that at the time of impact he had reduced his speed to thirty to thirty-five miles per hour, even though he did not apply his brakes. Plaintiff further said that he did not know how much of his vehicle was in the left lane by time of impact, and that the only thing that kept him from going into the right hand lane was the fact that "everything was so quick, it was too late."

Defendant testified that he went over the center line at one mile per hour and was one and one-half feet over at the time of impact; that at the time of impact he had been stopped five to six seconds; that the clutch was engaged in first gear; that if he had backed up one and one-half feet the collision could have been avoided; and that plaintiff's bumper just "pinged" his bumper.

■ The first and basic fact of liability under the humanitarian doctrine is a position of imminent peril. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 (Mo.1924). The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583 [13, 14] (Mo.

1955). And, it is only when such imminent peril arises that the humanitarian doctrine, blotting out antecedent negligence, seizes upon the then existing situation and imposes the duty thereafter to exercise proper care to avoid inflicting the threatened injury. Ornder v. Childers, 327 S.W.2d 913, 916 [3] (Mo.1959).

 Whether and when one becomes chargeable with notice that another is in a position of imminent peril depends upon the *reasonable appearances* of the situation confronting him. In short, ". . . '[i]t is the reasonable appearances of the situation that imposes the duty to act.' . . ." Faught v. Washam, 329 S.W.2d 588, 597 (Mo.1959). Hence, what constitutes a position of imminent peril varies according to, and must be determined in the light of the facts and circumstances of each particular case.

Under plaintiff's factual version, what were the reasonable appearances of the situation when defendant first sighted him? Defendant's testimony was that as he got to the center line, he was going about a mile an hour—just creeping. As he crossed forward he looked to his right (west) and then saw the roof of a small car at which point his vehicle was about a foot or a foot-and-a-half across the center line. The vehicle he saw was about one hundred feet away and he stopped. Plaintiff's vehicle continued straight on, without swerving and grazed the front of his (defendant's) stopped vehicle. On this showing, there is no evidence to show that plaintiff was ever in a position of immediate danger, as perceived by a reasonable person in defendant's position. Here, there is no evidence that plaintiff was in a position of imminent peril at the time defendant saw the top of an automobile, even though he may have subsequently come into such a position. Plaintiff was not oblivious and admittedly had control of his automobile; and when the two vehicles were sixty feet apart traveling at plaintiff's stated speed, plaintiff undoubtedly had sufficient time

and space within which to turn his vehicle, just the slightest, to his right (south) and avoid the collision. Likewise, there is nothing in the record to show where plaintiff's automobile was when defendant on reasonable appearances knew or should have known of plaintiff's position of imminent peril so as to place upon defendant thereafter the duty to back up his automobile. Lane v. Wilson, 390 S.W.2d 943, 947 (Mo. App.1965). We find no error in the court's refusal to give plaintiff's requested instruction on either humanitarian theory. This for the reason that a humanitarian case which leaves one or more of the essential elements to guesswork, speculation or conjecture is not for the jury.

*Accordingly, the judgment is affirmed.*

CLEMENS, Acting P. J., and GUNN, J., concur.