**Mae HILL and Chesley Hill,
Plaintiffs-Appellants,**

v.

**Michael David BOLING,
Defendant-Respondent.**

No. 35643.

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 6, 1975.

Motion for Rehearing or Transfer to Court En Banc or Transfer to Supreme Court Denied June 12, 1975.

William R. Kirby, Carl I. Katzen, St. Louis, for plaintiffs-appellants.

Murphy, Kortenhof & Ely, St. Louis, for defendant-respondent.

GUNN, Judge.

This suit arose from an intersection collision between an automobile driven by Chesley Hill and another driven by the defendant, Michael Boling. Mae Hill, a passenger in the car driven by her husband, Chesley Hill, brought this action seeking to recover damages for personal injuries sustained in the accident. Chesley Hill brought a separate claim against the defendant seeking to recover damages for loss of consortium and medical expenses incurred by his wife. The jury returned verdicts in favor of the defendant. Both plaintiffs appeal, and we affirm the judgment.

The accident occurred at night at the intersection of Lemay Ferry Road and Fanny Avenue in St. Louis County. Lemay Ferry Road is straight, running north-south; Fanny Avenue runs generally east-west. At the time of the accident, the intersection was controlled by a flashing amber traffic light. The weather was clear and the roads were dry. The plaintiffs were driving southwardly on Lemay Ferry Road at a speed of 20–25 m. p. h. As Chesley Hill approached the intersection of Fanny Avenue, he slowed his vehicle down, intending to make a left turn onto Fanny. There was conflicting testimony as to whether he came to a complete stop before proceeding into the turn. Mr. Hill testified that he had reduced his car's speed to 5 m.

p. h. and proceeded into the turn; that before turning he looked to the south and did not see any traffic approaching. He further stated that he first saw the defendant's car a few seconds before impact. At the time of impact, the front end of the Hills' car was three or four feet into Fanny Avenue.

Prior to the collision, the defendant was driving north on Lemay Ferry Road at a speed of 25–30 m. p. h. As the defendant approached the intersection of Lemay Ferry and Fanny, the plaintiffs' car began its turn directly in his path. The defendant applied his brakes and swerved to his left. The front right end of his car struck the rear right side of the plaintiffs' car. After impact, the defendant lost control of his automobile, which traveled onto the sidewalk and struck a wall over one hundred feet from the intersection. As a result of the collision, plaintiff Mae Hill was thrown from the car and seriously injured.

The plaintiffs raise four points on appeal. Plaintiff Mae Hill contends that the trial court erred in failing to submit excessive speed as an alternative theory of the defendant's negligence in a verdict directing instruction on her behalf. Plaintiff Chesley Hill claims that the court erred in omitting from his humanitarian submission the claim that the defendant was negligent in failing to sound a warning. The plaintiffs also allege that the trial court erred in admitting testimony of the speed limit on Lemay Ferry Road. The final point raised by the plaintiffs is a claim that the trial court abused its discretion by sustaining the defendant's objection to a question asked by the plaintiffs' counsel during voir dire examination.

■ The plaintiffs concede, and it is well established, that improper acts of negligence submitted by instructions to the jury must be supported by sufficient evidence. Cook v. Cox, 478 S.W.2d 678, 680 (Mo.1972); Wolfe v. Harms, 413 S.W.2d 204, 210 (Mo. 1967); Rakestraw v. Norris, 478 S.W.2d 409,

416 (Mo.App.1972); Shelton v. Bruner, 449 S.W.2d 673, 676 (Mo.App.1969); MAI No. 1.02 Committee's Comment; MAI No. 17.02 Notes on Use. Thus, there must be sufficient evidence to support the alleged improper acts of excessive speed and failure to warn before these theories can be presented to the jury.

Plaintiff Mae Hill offered Instruction B which read as follows:

"Your verdict must be for plaintiff Mae Hill if you believe: First, defendant either:

failed to keep a careful lookout, or *drove at an excessive speed*, or defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have slackened his speed but defendant failed to do so, and

Second, defendant's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff Mae Hill." (emphasis added)

The court refused to submit this instruction to the jury and in its place read to the jury Instruction No. 4 which was identical in all respects to Instruction B with the exception that "drove at an excessive speed" was omitted from the first paragraph. The plaintiff contends that there was sufficient evidence to support the inclusion of her excessive speed theory. She notes that the intersection of Lemay Ferry and Fanny is located in a commercial area. At one corner of the intersection is a gasoline service station, on another corner is an ice cream store and within two hundred feet of the intersection is a drive-in hamburger restaurant. All of these business establishments were open at the time of the accident. The intersection was controlled by a flashing amber light, and there was testimony to the effect that the defendant failed to slow down when approaching the intersection.

The plaintiff contends that the evidence demonstrated that the defendant continued to drive at approximately 30 m. p. h. when he saw or should have seen the plaintiffs' car approaching with its left-turn signal on. The plaintiff also points to the testimony of a professional engineer who testified as to stopping distances of an automobile driven at various speeds, which indicated that the defendant could have slowed or stopped his car and thereby avoided the collision. Finally, the plaintiff claims that the final resting place of the defendant's car is an indication that he was driving at an excessive speed. Relying on all these factors, the plaintiff asserts that the speed the defendant was traveling was excessive under the circumstances and that a jury issue had been made.

■■■ Whether speed is excessive depends on the condition of the road as well as surrounding circumstances. Vaeth v. Gegg, 486 S.W.2d 625 (Mo.1972); Wolfe v. Harms, supra; Bear v. Devore, 176 S.W.2d 862 (Mo.App.1944). As stated in Bear v. Devore, supra, "[t]he question is whether or not the rate of speed, whatever it was, was excessive in view of the surrounding facts, conditions and circumstances of which defendant had actual or implied knowledge." 176 S.W.2d at 864.

Cases where Missouri courts have upheld excessive speed allegations under particular conditions and circumstances are: when an accident occurred at a 6-way intersection in a business district, Wolfe v. Harms, supra; when a head-on collision occurred on an icy county road, Calvert v. Super Propane Corp., 400 S.W.2d 133 (Mo.1966); when an approaching car swerved several times into the defendant's lane and the defendant continued to drive at essentially the same speed, Berry v. Harmon, 329 S.W.2d 784 (Mo.1959); when the accident occurred during the rush-hour and the roads were wet, Rakestraw v. Norris, supra; and when the road was wet, vision was obstructed by bushes and a solid line of parked cars nar-

rowed the width of the street, Janicke v. Hough, 400 S.W.2d 645 (Mo.App.1966).

However, it has been held that an excessive speed case was not made when the weather was clear, the road was straight and dry and the defendant was familiar with the area, was not exceeding the speed limit and had a clear and full view of what was ahead of him. Harris v. Goggins, 363 S.W.2d 717 (Mo.App.1962). See also Pitts v. Garner, 321 S.W.2d 509 (Mo.1959), which in addition to the factors listed above, looked to the condition of the defendant's car as well as to whether the defendant had been drinking or if he was fatigued.

In the case at bar the evidence is insufficient to warrant the submission of the case on a theory of excessive speed. It is undisputed that at the time of the accident the road was dry and the weather was clear. Although the intersection of Lemay Ferry and Fanny can be viewed as a commercial intersection, it is also undisputed that there was little if any traffic on the road when the accident occurred. The defendant was driving within the speed limit, and there was no evidence of drinking or fatigue or any operating defects in defendant's automobile. Although the resting place of the defendant's car after the accident can be a factor that the jury could consider in determining excessive speed when other evidence of excessive speed is present, Marshall v. Bobbitt, 482 S.W.2d 439 (Mo.1972); Wolfe v. Harms, supra; standing alone, this fact is not sufficient evidence of excessive speed. See Vaeth v. Gegg, supra; Rakestraw v. Norris, supra. The other factors that the plaintiff claims create sufficient evidence of excessive speed (that this was a controlled intersection; that the car the plaintiff was riding in approached with its left-turn signal on; and that the defendant had adequate time to stop) really go to the negligence theories of failure to keep a look-out and failure to slacken speed under which the case was submitted to the jury. We thus hold that the trial court did not err in omitting from

plaintiff Mae Hill's verdict directing instruction her suggested theory of negligence based on excessive speed.

The plaintiffs' second point on appeal deals with the trial court's failure to include in plaintiff Chesley Hill's humanitarian submission to the jury the claim that the defendant was negligent in failing to sound a warning. The trial court refused to give the following instruction offered by Chesley Hill:

"Your verdict must be for the plaintiff Chesley Hill whether or not plaintiff was negligent if you believe:

First, plaintiff's wife was in a position of immediate danger of being injured and was injured, and

Second, defendant knew or by using the highest degree of care could have known of such position of immediate danger, and

Third, at the moment when defendant first knew or could have known of such position of immediate danger, defendant still had enough time so that by using the means available to him and with reasonable safety to himself and all others and by using the highest degree of care, he could have avoided injury to plaintiff's wife by either slackening his speed, or swerving, or *sounding a warning*, and

Fourth, defendant negligently failed to so slacken his speed, swerve, or *sound a warning*, and

Fifth, as a direct result of such failure, plaintiff's wife was injured and plaintiff thereby sustained damage." (emphasis added)

The trial court did read to the jury Instruction No. 5 which included plaintiff's theory of failure to slacken speed and failure to swerve but which excluded plaintiff's theory of failure to warn.

A defendant's duty to act under the humanitarian doctrine arises once it becomes apparent or should have become ap-

parent to him that the plaintiff is in a position of imminent or immediate peril. Wilson v. Toliver, 305 S.W.2d 423 (Mo.1957); Hood v. Heppler, 503 S.W.2d 452 (Mo.App. 1973); Jeffries v. Saalberg, 448 S.W.2d 288 (Mo.App.1969). "The peril truly must be imminent—that is, certain, immediate, and impending . . . . A likelihood or bare possibility of injury is not sufficient to create imminent peril." Hood v. Heppler, supra, 503 S.W.2d at 456. After establishing that he was in a position of imminent or immediate peril, the plaintiff has the burden of showing that the defendant could have avoided the accident. Vietmeier v. Voss, 246 S.W.2d 785 (Mo.1952); Johnson v. Bush, 418 S.W.2d 601 (Mo.App.1967). When a humanitarian case is based upon a failure to warn, the plaintiff must show more than he would have to under a humanitarian case based on a failure to swerve, slacken speed, or stop. As stated in Vietmeier v. Voss, supra, 246 S.W.2d at 789:

> "The theory of failure to stop is predicated solely upon the basis that if the defendant himself had caused the instrumentality to be stopped that the injury would have been thereby avoided. But when plaintiff's theory and submission is predicated upon defendant's failure to warn there is presupposed (and time must be allowed for) a timely co-operative action by plaintiff in which to heed the warning and escape injury."

Thus, the plaintiff must show that the defendant had sufficient time to sound a warning and that the plaintiff had sufficient time after hearing the warning to free himself from the peril.

■ In this case, the plaintiff came into a position of imminent peril when he began his left turn in the path of the defendant's oncoming car. The plaintiff introduced into evidence various calculations of a professional engineer. He testified that the arc the plaintiff's car traveled in making its left turn was 45 feet long. If the car commenced the turn traveling at a speed of 5 m. p. h., it would have taken four seconds to reach the point of impact. If the turn was commenced from a stopped position it would have taken 6 seconds for it to reach that point. The engineer also testified to the distances a car would travel going various specified speeds over 4 second and 6 second intervals. He also testified as to the stopping distances, accounting for reaction time, of a car traveling at these speeds.[1] The stopping distance figures submitted by plaintiffs' engineer indicate that the defendant could have stopped his car or slackened his speed to avoid the accident. As was noted above, the case was submitted to the jury on the theories of failure to slacken speed and failure to swerve. But no attempt was made to show how much time would be required for the defendant to sound a warning, for the plaintiff to hear it and then accelerate through his turn to escape the defendant's path of travel. Further, the undisputed evidence showed that when the defendant did see the plaintiff cross in front of him, he did apply his brakes and swerve to his left. As was stated in Pitts v. Garner, supra, 321 S.W.2d at 515:

> "When a situation suddenly confronts a driver and he has time to stop, swerve or slacken speed, or attempt to do so, but

---

1. The conclusions reached by the engineer as to stopping distances at certain speeds were:

| Speed | Distance traveled in 4 seconds | Distance traveled in 6 seconds | Stopping distances |
|---|---|---|---|
| 20 m. p. h. | 116' | 174' | 41' (22') |
| 25 m. p. h. | 148' | 222' | 58' (28') |
| 30 m. p. h. | 176' | 264' | 76' (33') |

The distances indicated in parenthesis are reaction distances, the distance the car would travel at a specific speed during the 3/4 second it takes for a driver to react to an emergency. These distances have been accounted for in the total stopping distances indicated.

does not have sufficient time to do these acts and also sound a horn, his election to attempt to stop or swerve or slacken his speed does not necessarily mean he was negligent in failing to sound his horn."

We find that a submissible case has not been made on the theory of failure to sound a warning. From what evidence is in the record, the jury would have been forced to speculate as to what effect a warning would have had. "[A] humanitarian case which leaves one or more of the essential elements to guesswork, speculation or conjecture is not for the jury." Hood v. Heppler, supra, 503 S.W.2d at 457.

■■■ The plaintiffs assert that the trial court erred in admitting both evidence of the speed limit of Lemay Ferry Road and evidence that the defendant was not exceeding it at the time of the accident. The plaintiffs allege that this testimony was irrelevant to the question of excessive speed and highly prejudicial. We agree with the plaintiffs that the mere fact that a person was driving at the posted speed limit does not absolve him of liability if his speed is found to be excessive under the circumstances. There are numerous cases which have stated that speed may be excessive even though the driver was obeying the speed limits, e. g., Wolfe v. Harms, supra; Rakestraw v. Norris, supra; Janicke v. Hough, supra. However, when determining if speed is excessive under the circumstances, it is proper to look to the posted speed limit and if the driver was exceeding it. Pitts v. Garner, supra; Harris v. Goggins, supra. Thus, evidence of the speed limit on Lemay Ferry Road was admissible.

The last point raised by the plaintiffs is their contention that the trial court abused its discretion in sustaining the defendant's objection to a question asked of the jury panel during voir dire examination. Counsel for the plaintiffs attempted to ask the following question:

"MR. KIRBY (Plaintiffs' counsel): Now, as I mentioned to you here, Mrs. Hill was a passenger in the car and her husband was a driver of the car, and Mr. Boling is the defendant in the case. Being a passenger in the car, and the Court will give you the instructions in the case, you are in sympathy with the rule where a passenger can recover against a wrongdoer even though her driver may have been partially at fault?"

■■■ In considering the proper scope of voir dire examination, two principles must be kept in mind as are set out in Barnes v. Marshall, 467 S.W.2d 70 (Mo. 1971): "It is fundamental in our jury system that litigants are entitled to unbiased and unprejudiced jurors. And in order to obtain such they should be allowed a reasonable latitude in examining prospective jurors on voir dire." 467 S.W.2d at 76. The court went on to say: "[O]f necessity, a trial judge is vested with a broad discretion in controlling the voir dire examination and his rulings should not be disturbed unless they clearly and manifestly indicate an abuse of such discretion." 467 S.W.2d at 76. Several limitations exist on the latitude allowed counsel in discovering bias, some of which are relevant here. He may not tell the panel what the court's instructions will be, Littell v. Bi-State Transit Development Agency, 423 S.W.2d 34, 38 (Mo.App.1967), or inform the jury as to the law, State v. Smith, 422 S.W.2d 50, 68 (Mo. banc 1967) cert. denied, 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed.2d 176 (1968). When counsel seeks to uncover bias as to the law, as counsel tried to do here, he should follow the procedure set out in State v. Mosier, 102 S.W.2d 620, 624 (Mo.1937):

"The correct procedure is for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly . . . ."

Using this standard, the Missouri Supreme Court held in Duensing v. Huscher, 431

S.W.2d 169, 172 (Mo.1968), that the following question was properly allowed in a suit seeking punitive damages:

. . . "I'm going to ask the jury whether or not—if the Judge instructs you on punitive damages in this case, whether or not you have any reservations in your mind against applying the law?"

See also Littell v. Bi-State Transit Development Agency, supra, 423 S.W.2d at 36. In an obscenity case, however, counsel was not permitted to question the panel of veniremen concerning their belief in the principles of presumption of innocence, burden of proof, and reasonable doubt. In affirming the trial court, the Missouri Supreme Court held that the questions merely sought to reveal the personal feelings of the jurors as to whether they thought the law was good or bad. The court felt this was irrelevant "unless with respect to those rules they entertained views so unyielding as to preclude them from following the law under the court's instructions. Defendant counsel did not indicate any intention to question in this area." State v. Smith, supra, 422 S.W.2d at 68.

From the above authorities, it follows that questions seeking to reveal bias as to the law must focus on whether any personal beliefs of the prospective jurors would prevent them from following that law if so instructed by the court. The question not permitted in the case at bar is not presented in such a manner. On its face the question appears to tell the jury what the court will instruct. By using the phrase "are you in sympathy with," counsel seems to be asking whether the members of the panel think that the rule is a good one. The question does not ask them whether they would be unable to follow the rule, if so instructed, due to some personal conviction. For these reasons, we cannot say that there was error in sustaining the defendant's objection to the question.

The judgment is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.