**David J. ROPER, Appellant,**

v.

**Diane M. ARCHIBALD, Respondent.**

No. 13372.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 23, 1984.

Motion for Rehearing or Transfer Denied
Nov. 15, 1984.

Harold F. Glass, John G. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for appellant.

E. Mitchell Hough, David W. Hall, Jr., Bussell, Hough, O'Neal, Crouch & Hall, Springfield, for respondent.

CROW, Judge.

On Tuesday, January 27, 1981, a moped operated by David J. Roper ("plaintiff") collided with a Pontiac automobile operated by Diane M. Archibald ("defendant") in the intersection of Campbell Avenue and Westview Street in Springfield, Missouri. Plaintiff, hospitalized six weeks as a result of the accident, sued defendant for personal injuries. Trial by jury produced a verdict for defendant, and judgment was correspondingly entered. Plaintiff appeals, insisting the trial court erred in instructing the jury on contributory negligence.[1]

Campbell, a paved "major artery" running north and south, is 69 feet wide at the collision site. It has two lanes for northbound traffic and two for southbound traffic. Westview, also paved, runs east and west, passing through Campbell perpendicularly. East of Campbell, Westview is 41 feet wide; west of Campbell, Westview is 35 feet wide. The south curb lines of Westview on each side of Campbell are aligned, thus the north curb line of Westview west of Campbell is about 6 feet south of the north curb line of Westview east of Campbell.

Westview, east of Campbell, has three traffic lanes. The northern lane is for through westbound traffic, the middle is for westbound traffic turning left (south) on Campbell, and the southern is for eastbound traffic. West of Campbell, Westview also has three traffic lanes. The northern is for westbound traffic, the middle is for eastbound traffic turning left (north) on Campbell, and the southern is for through eastbound traffic.

Vehicular movement in the intersection is controlled by two overhead electric signals. For Westview traffic, the signals show—in turn—green, yellow and red. There is no "arrow" for left-turning Westview traffic, coming from either direction.

The speed limit on Campbell is 45 miles per hour; on Westview, 30 miles per hour.

The collision occurred about 4:00 to 4:10 p.m. The weather was clear, the pavement dry. Prior to impact, plaintiff, riding alone, was on Westview, east of Campbell, heading west. Defendant, likewise unaccompanied, was on Westview, west of Campbell, heading east and planning to turn left on Campbell.

Defendant testified that as she reached the intersection, she was driving in the middle lane, her left turn signal flashing. Two vehicles were preceding her in the same lane. The traffic light was red.

The light turned green and the two leading vehicles turned north. According to defendant, she looked east on Westview and saw no westbound traffic in the through lane within 500 feet of the intersection. She did see traffic on Westview, east of the intersection, headed west in the middle lane, waiting to turn south on Campbell. Defendant "came to a rolling stop, slowed down," and determined that the vehicles facing her in the middle lane were indeed turning south. Seeing no westbound traffic in the through lane, defendant began turning north. She explained:

"Then, just as I was starting to turn, I looked to the right and just about a second before impact, I saw Mr. Roper's hand towards the right passenger's window of the car. It's like the person would be sitting next to me. I realized I was coming on impact and put on the brakes."

Plaintiff testified, without contradiction, that as he approached the intersection he was traveling 15 to 20 miles per hour along the "right-hand tire track" in the through westbound lane of Westview, 3 to 4 feet south of the north curb. When he was 2 to

---

1. Trial occurred before *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), which abolished the doctrine of contributory negligence, replacing it with a system of comparative fault. *Id.* at 16.

4 car lengths from the intersection, he looked at the signal and saw it was green. He saw no other traffic in the through westbound lane of Westview, and saw no eastbound traffic occupying the middle lane of Westview in the intersection, waiting to turn left (north). He did see two or three westbound vehicles to his left in the middle lane of Westview. They "seemed to be stopped," waiting to turn left (south). He saw no eastbound traffic crossing the intersection in the south lane of Westview that would have detained these left-turning vehicles.

Plaintiff first saw the Pontiac when it was about 10 feet away, turning northeast in front of him, 6 to 8 feet into his lane. A second or two later, the front wheel and fender of the moped collided with the right front fender of the Pontiac.

Plaintiff's claim was submitted to the jury by an instruction hypothesizing that defendant failed to yield the right-of-way.[2]

The trial court, at the instance of defendant, instructed the jurors that their verdict had to be for defendant if they believed plaintiff either failed to keep a careful lookout or drove at an excessive speed, that plaintiff, in either or both respects, was negligent, and that such negligence directly caused or directly contributed to cause any damage he may have sustained.

Plaintiff maintains that neither assignment of contributory negligence should have been submitted.

■ In determining whether there was sufficient evidence to support the submissions of contributory negligence, we consider the evidence in the light most favorable to defendant, giving her the benefit of all favorable inferences reasonably to be drawn therefrom; we disregard plaintiff's evidence unless it tends to support the grounds of contributory negligence submitted in the instruction. *Welch v. Hyatt,* 578 S.W.2d 905, 912[1] (Mo. banc 1979);

*Jackson v. Skelly Oil Co.,* 413 S.W.2d 239, 242[2] (Mo. banc 1967).

■ As to excessive speed, the evidence most favorable to defendant was that the moped was going 20 miles per hour as it entered the intersection. Though that was 10 miles per hour below the speed limit for Westview, defendant reminds us that a motorist who drives at a speed which endangers persons and property under the existing conditions may be guilty of negligence even though his speed is within the lawful limit. *Powell v. Watson,* 526 S.W.2d 318, 326[9] (Mo.App.1975); *Rakestraw v. Norris,* 478 S.W.2d 409, 415[9] (Mo.App.1972).

Defendant emphasizes that the intersection was a busy one, that Campbell is heavily traveled, a major shopping center sits on the southwest corner, and a high school that dismisses classes about 3:15 to 3:30 p.m., is situated on Westview some distance east of the intersection. In addition, plaintiff had owned the moped only 8 or 9 days, had ridden it only 5 or 6 times totaling about 90 miles, had not driven it over 26 or 27 miles per hour, had not read the owner's manual regarding braking distances, and was not "motorcycle qualified."

Defendant also points out that plaintiff was wearing no helmet, that his clothing was light gray, and that the moped was metallic green with a black seat, the implication being that plaintiff was thereby less visible to other motorists than a moped rider would normally be.

Furthermore, says defendant, plaintiff was "tired," as he had risen at 4:30 a.m., worked a full shift as a laundry foreman at a correctional facility, and run some errands after work.

According to defendant, these factors, in the aggregate, made a jury issue whether plaintiff's speed was excessive under the circumstances.

*Hill v. Boling,* 523 S.W.2d 867 (Mo.App. 1975), like the instant case, involved an intersection collision between a left-turning

---

**2.** The submission was based on an ordinance of the City of Springfield providing: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

vehicle and one going straight through in the opposite direction. The accident occurred at night at a "commercial" intersection in St. Louis County, in clear weather on dry pavement. Both vehicles had the right-of-way against perpendicular traffic. The plaintiffs, turning left, saw no oncoming traffic. The defendant, approaching at 25 to 30 miles per hour (within the speed limit), saw plaintiffs turn into his path. He braked and swerved, but was unable to avoid the collision. The trial court's refusal to submit excessive speed as an assignment of negligence against the defendant was upheld on appeal. The Court of Appeals, reviewing several cases where submission of excessive speed had been approved, found no circumstances justifying it in *Hill*. Defendant was traveling within the speed limit, and there was no evidence of drinking or fatigue or any operating defects in his automobile. *Id.* at 871.

Such is the situation here. Although defendant implies plaintiff was tired because of the early hour he arose, there is no evidence that this was out of the ordinary for plaintiff or that his senses or reflexes were impaired in any way. Weather and pavement conditions were favorable, and the accident occurred in daylight. There was no evidence of any operating defect in the moped.

Additionally, plaintiff had the green light, there were no westbound vehicles preceding him in the through lane, and his path would have been unobstructed had defendant not turned in front of him. Even acknowledging plaintiff's inexperience operating the moped, we fail to see how 20 miles per hour was, even arguably, an excessive speed in these circumstances.

In *Carder v. Eaton*, 629 S.W.2d 553 (Mo. App.1981), a northbound motorcycle going 35 miles per hour in a 45 mile per hour zone collided with an automobile that pulled into the road from a parking lot on the east, intending to turn south. The motorcyclist sued for personal injuries. The trial court submitted excessive speed as an assignment of contributory negligence against the motorcyclist. The Court of Appeals, citing *Hill* and other cases, reversed, finding no conditions regarding

the motorcyclist, his vehicle, the traffic or the road from which the jury could find the motorcyclist's speed was excessive. Pertinent to the case before us, *Carder* states:

"The only factor that made plaintiff's speed too great was, as it turned out, that defendant's car was driven into his path, and he was unable at the speed at which he was traveling to avoid colliding with it." *Id.* at 555.

The opinion added that the motorcyclist need not have anticipated that the automobile would be driven into his path, and was not required to regulate his speed by reference to that possibility.

Were we to uphold the submission of excessive speed as an act of contributory negligence in this case, we would, in effect, be requiring any motorist with the right-of-way in an intersection to drive at a speed at which he could stop if a vehicle facing him, pausing to turn left, pulled suddenly and unexpectedly into his way. Traffic could hardly move through an intersection under such constraint.

■ Defendant argues that the two vehicles that had turned north in front of plaintiff before defendant began her turn, and the westbound vehicles in the lane to plaintiff's left, waiting to turn south, should have alerted plaintiff that there were other vehicles in the intersection. Even if that be true, we fail to see how it renders plaintiff's speed excessive. It was obviously unnecessary for plaintiff to reduce his speed because of the two vehicles that turned north, as they had cleared the intersection at the time the collision occurred and were no factor in it. Vehicles to plaintiff's left would have had to yield for through eastbound traffic, but would not have been detained by vehicles facing them, turning north. Defendant's argument, though skillful and imaginative, is unpersuasive.

We hold that the evidence was insufficient to support the submission that plaintiff drove at an excessive speed.

■ However, even had it been a jury issue whether 20 miles per hour was an excessive speed for the moped under the circumstances, submission of excessive

speed lacked evidentiary support for another reason.

The jury, in order to return a verdict for defendant on the ground that plaintiff was contributorily negligent in driving at an excessive speed, had to find not only that plaintiff was negligent in driving at that speed, but also that such speed was a directly contributing cause of the collision. *Bowman v. Heffron*, 318 S.W.2d 269, 274[6] (Mo.1958); MAI 32.01(2) [1978 New] (3d ed. 1981).

■■■ Excessive speed is not the proximate cause of a motor vehicle collision unless it prevents the operator of the vehicle traveling at the excessive speed from avoiding the accident; hence, it must be shown that the collision would not have occurred except for the excessive speed shown by the evidence. *Calvert v. Super Propane Corp.*, 400 S.W.2d 133, 139[5] (Mo.1966); *Powell*, 526 S.W.2d at 326[12]; 5 Mo.Dig.2d, *Automobiles*, Key No. 201(2). Causal connection between the excessive speed and the collision must be proved by the evidence, as a fact, and not be left to mere speculation and conjecture. *Watt v. St. Louis Public Service Co.*, 354 S.W.2d 889, 891[2] (Mo.1962). This rule, however, does not require that there must be direct proof of the fact itself; it is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred. *Id.; Calvert*, 400 S.W.2d at 139[6].

■ It was undisputed that plaintiff was only 10 feet from the Pontiac when he first saw it. Whether he should have seen it earlier (an inquiry relevant to whether he failed to keep a careful lookout) is immaterial to whether his speed was a proximate cause of the accident. The speed issue is determined independently of the lookout issue.

■ The trial court took judicial notice that a driver's "normal reaction time" is three-fourths of a second.[3] At 20 miles per hour, the moped would have covered the 10 feet between it and the point of impact in .34 second, less than half the reaction time. It is therefore obvious that at 20 miles per hour, plaintiff had no opportunity to take preventive action upon seeing the Pontiac.

There was no testimony as to the length of the Pontiac, but photographs reveal it is a 4-door sedan, and that the moped struck it on the right front fender, entirely ahead of the front door. It is thus evident that at least 10 feet of the Pontiac had not passed the point of impact at the time of the collision.

Had plaintiff been going 10 miles per hour, it would have taken him .68 second to reach the point of impact after seeing the Pontiac, twice as long as the .34 second required at 20 miles per hour (but still less than the ¾ second reaction time).

Defendant did not testify as to her speed when the vehicles collided, but two independent witnesses gave their estimates. One said the Pontiac's speed was "less than 15." The other said "about 10 miles, maybe slower."

At 14 miles per hour, the evidence most favorable to defendant for the purpose of this aspect of the case, the Pontiac travels 20.5 feet per second. Had plaintiff been going 10 miles per hour instead of 20, the Pontiac would have traveled about 7 feet farther during the additional .34 second required for plaintiff to reach the point of impact, still not far enough to clear plaintiff's path. Obviously, at a speed slower than 14 miles per hour, the Pontiac would have traveled even fewer feet, thus remaining in the impact zone.

It is consequently apparent that even had plaintiff been going only 10 miles per hour, the accident would have nonetheless occurred. Ten miles per hour, in the circumstances here, would unquestionably not have been an excessive speed for plaintiff. Therefore, as the collision was unavoidable even at 10 miles per hour, plaintiff's speed of 20 miles per hour, even if negligently excessive, was not the cause, or a contributing cause, of the accident. That being so, the evidence viewed most favorably to de-

3. *Koogler v. Mound City Cab Co.*, 349 S.W.2d 233, 237[6] (Mo.1961).

fendant failed to supply the element of causation in regard to plaintiff's alleged excessive speed. Lacking that element, submission of excessive speed as an assignment of contributory negligence was error. *McCreary v. Conroy*, 611 S.W.2d 234, 235[1] (Mo.App.1980); *Stotler v. Bollinger*, 501 S.W.2d 558, 560[1] (Mo.App.1973).

■ If one assignment of negligence is erroneously included in a multiple disjunctive submission of contributory negligence, the instruction is erroneous. *Saupe v. Kertz*, 523 S.W.2d 826, 830[4] (Mo. banc 1975); *Ferguson v. Ginn*, 652 S.W.2d 295, 298[4] (Mo.App.1983). The error is prejudicial, and requires a new trial. *Id.; Gilpin v. Pitman*, 577 S.W.2d 72 (Mo.App.1978).

Having decided this much, we do not reach plaintiff's complaint about the submission of failure to keep a careful lookout as an assignment of contributory negligence.

The judgment is reversed and the cause is remanded for a new trial.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.